499 S.E.2d 813

**In the Matter of Ernest WHITE, Respondent.**

No. 24783.

Supreme Court of South Carolina.

Heard March 4, 1998.
Decided April 27, 1998.

Larry C. Smith, Columbia, for Respondent.

Attorney General Charles Molony Condon and Senior Assistant Attorney General James G. Bogle, Jr., Columbia, for Complainant.

PER CURIAM:

In this judicial disciplinary proceeding, Respondent, a former magistrate for Jasper County, is charged with misconduct arising out of alleged misrepresentations he made on his magistrate application form. The Panel of Hearing Masters recommended Respondent be publicly reprimanded. The Board of Commissioners on Judicial Standards unanimously adopted the Masters' report and recommendation. We agree with the findings and recommendation of the Board and hereby publicly reprimand Respondent for his misconduct.

### FACTUAL/PROCEDURAL BACKGROUND

In May 1994, Respondent filed a notarized application form with the Governor's office to become Magistrate of Jasper County. On the application, Respondent indicated his level of education was a "high school graduate or its equivalence (G.E.D.)." Respondent was, in fact, not a high school graduate nor had he ever passed the high school level Test of General Equivalency Development (G.E.D.) at the time he filed the application with the Governor's office. On July 12, 1994, Governor Campbell appointed Respondent as Magistrate of Jasper County.

On July 14, Walter Leverette of Court Administration sent Respondent a letter accompanied by an information form for Respondent to fill out. Respondent indicated on the form that the highest level of education he had completed was 9th grade

in high school. There was no line on the form for Respondent to indicate whether he had obtained a G.E.D. In the letter, Leverette also informed Respondent that S.C.Code Ann. § 22–1–10(B) (1989) required magistrates to have a high school diploma or its recognized equivalent. The letter enclosed a form entitled, *Statement of Compliance—Minimum Education Requirements for Magistrates.* The letter directed Respondent to complete the form and return it with a certified copy of his high school diploma. Respondent never sent Leverette a copy of a high school diploma or G.E.D.

Leverette's letter further informed Respondent of a mandatory orientation school for new magistrates to be held on July 18–30, 1994. At the orientation, Respondent approached Louis Rosen, Director of Court Administration, and admitted he was not a high school graduate nor had he obtained a G.E.D. Rosen testified that after speaking with Respondent, he formed the opinion Respondent was not qualified to serve as a magistrate in South Carolina. Rosen asked Motte Talley, a staff attorney with Court Administration, to look into the matter. Talley provided Respondent with the name of a person to contact at the Department of Education in order for Respondent to take the next available G.E.D. test. Talley also wrote Governor Campbell alerting the Governor to the fact that Respondent did not possess a high school diploma or G.E.D. On August 13, 1994, Respondent took the G.E.D. test and initially received a passing score.

In October 1994, articles appeared in the State newspaper reporting allegations that Respondent had lied about his level education when he filed his application with the Governor's office. There were also reports that a person by the name of John E. Brown had switched G.E.D. test scores with Respondent to ensure Respondent would pass the exam. Subsequently, the United States Attorney's Office initiated a Grand Jury investigation concerning the "switched scores" allegation. John E. Brown and Stephon Edwards were ultimately indicted by the Grand Jury for violating various federal statutes. Respondent was not indicted.

On October 27, 1994, Respondent, through his attorney, informed Governor Campbell that due to the adverse effects of the media attention, he would take a leave of absence pending

resolution of the matter. On February 2, 1995, Respondent officially resigned as Magistrate of Jasper County.

On June 9, 1995, a formal complaint was filed against Respondent, alleging judicial misconduct under the Code of Judicial Conduct, Rule 501, SCACR. The complaint alleged Respondent had violated Canons 1 and 2(A) of Rule 501 by failing to disclose and/or misrepresenting his educational eligibility on his magistrate application form. In his answer, Respondent asserted three defenses: (1) the Board of Commissioners on Judicial Standards lacked jurisdiction over him since he was no longer a member of the judiciary; (2) the subject matter of the complaint was within the jurisdiction of a federal Grand Jury investigation and subject to a gag order issued by Judge Matthew J. Perry; and (3) Respondent was a target of the federal criminal investigation, and therefore, any requirement imposed upon him to answer the complaint would violate his Fifth Amendment rights.

A hearing before the Board of Commissioners on Judicial Standards ("Board") was scheduled to be held on October 20, 1995. Prior to the hearing, we issued a Consent Order holding the proceedings in abeyance indefinitely until the federal criminal proceedings could be concluded. We further stated, "the Examiner or the Respondent may file the appropriate Motion before the Commission for a hearing at such time as they believe that the reasons put forth for the necessity of the continuance no longer exists or have been adequately addressed."

On December 4, 1996, the Examiner submitted a motion to the Board requesting a hearing before the Hearing Masters to be held on February 14, 1997. In the motion, the Examiner stated that the allegations against Respondent only addressed Respondent's misrepresentation of his educational qualifications and did not involve the switched G.E.D. scores which were the focus of the federal investigation. The Board granted the Examiner's motion.

A hearing was held before the Hearing Masters on February 14, 1997. At the hearing, Respondent's attorney expressed concern about whether Respondent could testify in light of a gag order issued by Judge Matthew J. Perry. The Masters recessed the hearing and directed the Examiner to

make inquiries about the gag order. On February 14, the Examiner wrote Judge Perry, inquiring about the nature of any gag order. Judge Perry wrote back on March 12, 1997, stating that the federal Grand Jury proceedings were governed by the secrecy requirements provided in Rule 6(e), FRCP. Judge Perry further stated that the federal court had done nothing to interfere with any state investigation. The Examiner later spoke with Judge Perry by telephone at which time Judge Perry informed the Examiner that he had not issued a gag order but had only admonished the participants in the federal proceedings to abide by the secrecy requirements provided in Rule 6(e), FRCP.

The Examiner next wrote this Court requesting a partial lifting of the confidentiality of the proceedings to the extent that the Examiner could submit a copy of the complaint to the U.S. Attorney's Office and inquire as to whether that office would use any testimony Respondent might give in the disciplinary hearing. On April 2, 1997, we issued an order granting the partial lifting of confidentiality. The Examiner subsequently contacted the U.S. Attorney's Office which responded, stating it could not give any assurances that the grand jury would not use testimony given by Respondent at a Judicial Standards hearing.

The Hearing Masters reconvened on August 1, 1997, at which time Respondent invoked his Fifth Amendment right not to testify. The Hearing Masters found Respondent had violated Canons 1 and 2(A) of Rule 501, SCACR, and recommended a public reprimand. The Full Board unanimously voted to adopt the report of the Masters. The Board certified the record to this Court on December 30, 1997. Respondent elected not to submit a supporting brief but reserved his right to make oral arguments before this Court.

## DISCUSSION

Respondent initially argues the Code of Judicial Conduct does not apply to him because at the time he completed the application form, he was not yet a judge. We disagree. Under Rule 502(1), SCACR, judicial misconduct includes "not only judicial actions but also non-judicial actions, whether the conduct complained of occurred *before or after* the judge

assumed office, if . . . (2) His conduct has violated the Code of Judicial Conduct or the Rules of Professional Conduct." (emphasis added); *see also In re Wright,* 310 S.C. 191, 422 S.E.2d 746 (1990) (magistrate publicly reprimanded for submitting fraudulent insurance application prior to taking judicial office). Moreover, Respondent's alleged misconduct was directly related to his subsequent appointment as Magistrate of Jasper County. Therefore, the Code of Judicial Conduct applies to Respondent's conduct in this case.[1]

■ South Carolina Code Ann. § 22–1–10(B) (1989) provides,

No person is eligible to hold the office of magistrate who is not at the time of his appointment a citizen of the United States and of this State, and who has not been a resident of this State for at least five years, and has not attained the age of twenty-one years upon his appointment, and *has not received a high school diploma or its equivalent educational training as recognized by the State Department of Education.*

(emphasis added). At the time Respondent filed his application form with the Governor's office, the Department of Education only recognized the G.E.D. as the equivalent to a high school degree pursuant to amended Reg. 43–130. *State Register,* Vol. 15, Issue No. 5 (May 24, 1991). This regulation, which is now codified at 24 S.C.Code Ann. Regs. 43–259 (Supp.1997), provides, in part, "The State Board of Education recognizes the high school level Tests of General Educational Development (GED) and shall issue a state high school equivalency credential to eligible candidates who successfully complete the tests." Additionally, David Stout, G.E.D. Administrator for the South Carolina Department of Education,

---

1. We note that this case is governed by former Rule 502, SCACR, since Respondent's conduct occurred prior to January 1, 1997, the effective date of amended Rule 502. Nevertheless, we would reach the same conclusion under amended Rule 502. Under Rule 3(b)(1) of amended Rule 502, "The Commission has jurisdiction over judges regarding allegations that misconduct occurred *before or during* service as a judge. . . ." (emphasis added). Rule 2(q) defines misconduct as "any conduct by a judge constituting grounds for discipline. See Rule 7(a)." Rule 7(a) provides, "It shall be a ground for discipline for a judge to: (1) violate or attempt to violate the Code of Judicial Conduct or the Rules of Professional Conduct or any other applicable ethics codes."

testified before the Hearing Masters that the South Carolina Department of Education had, since the 1950's, recognized the G.E.D. as the only equivalent to a high school degree.

A factual finding of judicial misconduct must be supported by clear and convincing evidence. *In re Peeples*, 297 S.C. 36, 374 S.E.2d 674 (1988). Line 12 of the magistrate application form unambiguously asks the applicant whether he or she possesses a high school diploma or G.E.D. Pursuant to section 22–1–10(B), a negative response to this question completely disqualifies the applicant from pursuing the judicial office of magistrate. It is undisputed that at the time Respondent completed and filed his magistrate application form, he was not a high school graduate nor had he attained a G.E.D. Thus, Respondent's misrepresentation in this regard was essential in allowing the Governor to appoint him as Magistrate of Jasper County.

Canon 1 of Rule 501, SCACR, requires that a judge must "observe high standards of conduct . . . so that the integrity and independence of the judiciary shall be preserved." Canon 2(A) provides that a judge must "respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." A judicial candidate's truthful representation of his or her credentials is fundamental to preserving the integrity of the judiciary. Public trust in judicial office is founded upon the presumption that every judge has, at the very least, met the minimum requirements for their position. Consequently, a candidate who assumes judicial office by means of misrepresentation directly threatens the public's confidence in the integrity of the judiciary. Although Respondent later revealed his true academic credentials to officials at the orientation school, his revelation came after the Governor appointed him as magistrate. Moreover, Respondent failed to immediately resign. We therefore find that Respondent violated Canons 1 and 2(a) of Rule 501, SCACR, by assuming judicial office through the misrepresentation of his academic credentials.

Because Respondent has since resigned from office, the most severe sanction we can impose is a public reprimand. *In re Parker*, 313 S.C. 47, 437 S.E.2d 37 (1993).

**PUBLIC REPRIMAND.**