510 S.E.2d 419

**In the Matter of Synthia R. GLOVER, Respondent.**

No. 24872.

Supreme Court of South Carolina.

Heard Oct. 20, 1998.
Decided Dec. 29, 1998.

Attorney General Charles M. Condon, Assistant Deputy Attorney General J. Emory Smith, Jr., both of Columbia, for the Office of Disciplinary Counsel.

Coming B. Gibbs, Jr., of Charleston, for respondent.

424

## PER CURIAM:

This is an attorney disciplinary matter. Respondent misappropriated client funds for personal use, co-mingled personal funds with client funds, was involved in a check kiting scheme between her trust account and general operating account, and failed to pay medical providers on behalf of her clients. Respondent admitted the charges.

The Sub–Panel took into consideration respondent's previously clean disciplinary record, her remorse, and the personal problems which respondent was experiencing during this time period. Respondent's mother suffers from Alzheimer's disease and respondent has been her primary caregiver.[1] This created an emotional, physical, and financial hardship on respondent which left her severely depressed.[2] The Sub–Panel determined respondent should be allowed to rehabilitate herself. The Sub–Panel concluded the appropriate sanction was an indefinite suspension[3] and that prior to readmission to the bar, respondent provide restitution to all injured parties, be re-examined by the Committee on Character and Fitness, and obtain certification that she is free or not controlled by depression which has affected her judgment in the past. The full Panel agreed with the Sub–Panel's report and recommendations. No exceptions were filed concerning the findings or recommendations.

Respondent was involved in three check kiting schemes. Respondent also wrote checks on her general trust account for personal expenses. During this time, respondent used her trust and operating accounts as her personal account. In the end, however, the banks did not lose any money as a result of respondent's actions.

Respondent also committed misconduct in regards to several clients. Respondent represented Thomas Brown and his

---

1. Initially, respondent cared for her mother by driving from Charleston to Beaufort several times a week but later her mother moved in with her and respondent was and still is her primary caregiver.

2. Her doctor, Dr. E. Michael Limkin, testified that on a scale of 1 to 10 with a 6 being someone who would require hospitalization, he ranked respondent's depression as between 4 and 5.

3. Respondent was placed on interim suspension on June 30, 1997.

daughter for injuries received in an automobile accident. The claims were settled with State Farm for $5,078.80. Respondent deposited them into her trust account and converted the funds to other uses. Mr. Brown received a check from respondent for only $811.00. The Panel concluded that respondent owes Mr. Brown $4,267.00.

Respondent represented Fannie Mae Pearson in a home repair dispute from which $1,835.00 was collected on behalf of Mrs. Pearson. Mrs. Pearson did not receive the funds. The Panel concluded respondent owes Mrs. Pearson $1,835.00.

Respondent represented Kevin and Connie Nelson in a personal injury action. A settlement was reached for $4,500.00. Respondent paid herself $325.00 and paid a medical bill on behalf of the Nelson for $1,000.00. The remaining money was never sent to the Nelsons. The Panel concluded that respondent owes the Nelsons $3,175.00.

Respondent also misappropriated client funds which should have been used to pay medical bills on behalf of clients. The total amount of medical provider funds received and withheld from clients was $40,899.45. Medical providers have received only $6,562.00. Thus, respondent has not paid $34,337.95 to medical providers.[4]

▇ Respondent has violated: Rule 1.15, Rule 407, SCACR, by misappropriating client funds and failing to deliver funds to clients and medical providers and failing to deliver a full accounting; Rule 8.4(b) by committing acts that reflect adversely upon her honesty, trustworthiness, and fitness as a lawyer; Rule 8.4(c) by engaging in conduct involving moral turpitude; Rule 8.4(d) by engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation; and Rule 8.4(e) by engaging in conduct prejudicial to the administration of justice. Respondent also violated Rule 413, SCACR, Rule 7(a)(5) by engaging in conduct tending to pollute the administration of justice; and Rule 7(a)(6) by violating the oath of her office.

▇ "While this court may draw its own conclusions and make its own findings, *Burns v. Clayton,* 237 S.C. 316, 117 S.E.2d 300 (1960), the unanimous findings and conclusions of

---

4. Total restitution is $43,615.75.

426

both the Panel and Executive Committee are entitled to much respect and consideration." *In re Pride,* 276 S.C. 363, 366, 278 S.E.2d 774 (1981). In mitigation, we consider, as the Panel did, that respondent has admitted all the allegations against her and has expressed great remorse. Respondent has also presented a significant amount of other evidence in mitigation. Respondent developed severe depression during the time the above instances of misconduct occurred. In the past, we have allowed evidence of depression to mitigate misconduct. *See In re Weinberg,* 317 S.C. 300, 454 S.E.2d 316 (1995). In further mitigation, during this time respondent became the sole caretaker and provided financial support for her mother who had developed Alzheimer's disease. *See In re Holler,* 329 S.C. 395, 496 S.E.2d 627 (1998)(fact the respondent was sole caretaker for mother was considered in mitigation).

Accordingly, it is ordered that respondent be indefinitely suspended, retroactive to June 30, 1997, from the practice of law in this State. Respondent shall file an affidavit with the Clerk of Court within fifteen days of the date of the filing of this opinion, in compliance with Paragraph 30 of Rule 413, SCACR.