520 S.E.2d 804

**In the Matter of Paul M. LARKIN, Respondent.**

**No. 24994.**

Supreme Court of South Carolina.

Heard July 21, 1999.

Decided Aug. 23, 1999.

Desa Ballard, of West Columbia, for respondent.

Attorney General Charles M. Condon and Assistant Deputy Attorney General J. Emory Smith, of Columbia, for the Office of Disciplinary Counsel.

PER CURIAM:

In this attorney disciplinary matter, Respondent Larkin is charged with engaging in misconduct in violation of various provisions of the Rules of Professional Conduct (RPC) contained in Rule 407, SCACR, and the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413, SCACR.

The Sub–Panel recommended an Indefinite Suspension.[1] The Full Panel adopted the Sub–Panel's report and recommendation. Respondent stipulated to the majority of facts found by the Panel, and does not except to the recommended sanction; however, he requests the sanction be retroactive to Jan. 8, 1998, the date of his interim suspension. *See Matter of Larkin,* 329 S.C. 30, 495 S.E.2d 422 (1998).[2] We concur with the recommended sanction and hereby impose an indefinite suspension, retroactive to the date of Respondent's interim suspension.

## FACTS

This matter was instituted by a complaint alleging Respondent had issued Letters of Protection to pay the medical bills of 13 of his personal injury clients, but had not done so, notwithstanding the cases had been settled with the insurance companies. Thereafter, Respondent failed to respond to two letters from Disciplinary Counsel concerning this matter. A full investigation was commenced and Respondent was notified to appear for a hearing on Dec. 10, 1997; he was issued a subpoena duces tecum to bring all bank statements, checks, and account information for the previous two years with him but did not produce all bank records until sometime after the hearing.[3]

As a result of the investigation, the following problems were discovered with Respondent's various bank accounts:

### A. THE KOLCUN MATTER

Respondent represented Victoria Kolcun concerning her purchase of a mobile home. Between April, 1996 and Novem-

---

**1.** It also recommended Respondent pay $106.40 expenses incurred by panel members for the hearing.

**2.** Respondent was previously publicly reprimanded for failure to exercise diligence with clients, failure to communicate, and failure to respond to investigative requests. *Matter of Larkin,* 320 S.C. 512, 466 S.E.2d 355 (1996).

**3.** Although the Panel found Respondent initially failed to respond, it found that he did fully cooperate once he retained counsel to represent him.

ber, 1997, Respondent made numerous loans and mortgage payments to or for Kolcun from his Anchor Bank escrow account, his Anchor Bank operating account, his First Citizens escrow account, and his First Citizens operating account. Respondent admits these monies were disbursed to Kolcun without funds available from her to cover the disbursals, and admits that to the extent Kolcun was a client, the loans are violative of restrictions on advancing funds to clients. Rule 1.8, RPC, Rule 407, SCACR.

## B. THE PHIPPS MATTER

Respondent represented Catherine Phipps in a personal injury matter which was settled for $9000.00 on Oct. 24, 1997. He disbursed most of these proceeds to himself and to Phipps, but did not pay Phipps' medical expenses, notwithstanding he had issued Letters of Protection to the care providers.[4] He also made loans to Phipps which he admits were inconsistent with the Rules of Professional Conduct.

## C. THE DONAHUE AND HANICK MATTERS

Respondent represented Kimberly Donahue and her daughter, Patricia Hanick, in a personal injury/auto accident case. Donahue's claim was settled for $82,500, and Hanick's was settled for $77,500.00. In the Donahue matter, Respondent disbursed approximately $59,000.00 of the settlement to himself and to Donahue, and allegedly withheld the remaining funds (approximately $23,438.22) for payment to medical providers. However, the medical providers were never paid and the funds were removed from the trust account and used for other purposes. Additionally, Respondent made several loans and advances to Donahue which he admits are not authorized by the Rules of Professional Conduct. Finally, Respondent failed to pay Donahue's medical bills, notwithstanding Letters of Protection had been issued.

Regarding the Hanick matter, Respondent made disbursements of approximately $55,000.0 upon settlement of Hanick's claim, and made use of the remaining funds (approximately

---

4. Respondent did contend, however, that he had set aside settlement funds to pay a portion of one of Phipps' medical bills, but that he had not negotiated the balance at the time of his interim suspension.

$19,000.00) for purposes unrelated to Hanick. Respondent also made loans to Hanick, and failed to pay her medical providers, notwithstanding Letters of Protection had been issued.

## D. THE PETRICK MATTER

Respondent represented Alan Petrick in a personal injury matter which was settled for $60,000.00. Respondent disbursed a majority of the settlement proceeds to himself and Petrick. Respondent was unable to account for approximately $6900.00 of undisbursed settlement proceeds. He also made loans to Petrick, which were subsequently repaid from settlement funds. Respondent admitted both that the loans were improper under the RPC, and that the unaccounted for funds had been misappropriated. Finally, Respondent failed to pay Petrick's medical bills, notwithstanding Letters of Protection had been issued to medical providers.

## E. THE WILLIS CHIRO–MED MATTER

Respondent admits he failed to pay the Willis Chiro–Med bills for a number of his clients, despite having issued Letters of Protection to Willis and having received settlements from which the bills were to be paid.

In addition, Respondent failed to return the phone calls of both Willis and a number of clients concerning his failure to pay these medical expenses.

## G. TRUST ACCOUNT BALANCES

During the relevant time periods herein, Respondent's trust account balances at both Anchor Bank and First Citizen's Bank revealed repeated negative balances and numerous overdrafts, and checks returned for insufficient funds.

## MITIGATION

The only mitigation found by the Sub–Panel was the fact that numerous members of the Horry County Bar testified concerning his abilities as a lawyer. Although the Sub–Panel made no specific findings regarding the matter, we note that the hearing was devoted almost exclusively to witnesses at-

testing to Respondent's substantial community involvement, good character and reputation for honesty, and his lack of motive to gain profit in the matters set forth herein.

## SANCTION

 The Sub–Panel found Respondent had breached the following provisions of the RPC, Rule 407, SCACR, and the RLDE, Rule 413, SCACR: 1) Appropriated client's funds to his own use. Rule 1.15, Rule 407. 2) Failure to promptly deliver client funds to client or a third person. Rule 1.15. 3) Failure to promptly render a full accounting. Rule 1.15 4) Committed acts adversely reflecting on his honesty, trustworthiness, and fitness as a lawyer. Rule 8.4(b). 5) Improperly advanced funds to clients. Rule 1.8(e). 6) Engaged in conduct involving moral turpitude. Rule 8.4(c). 7) Engaged in conduct involving dishonesty, fraud, deceit and misrepresentation. Rule 8.4(d). 8) Failed to act with reasonable diligence and promptness in representing a client. Rule 1.3. 9) Failed to keep a client reasonably informed and comply with requests for information. Rule 1.4(a). 10) Violated the Rules of Professional Conduct. Rule 8.4(a). 11) Engaged in conduct prejudicial to the administration of justice. Rule 8.4(e). 12) Engaged in conduct tending to pollute the administration of justice or bring the courts or legal profession in disrepute, or engaged in conduct demonstrating unfitness to practice law. Rule 7(a)(5), RLDE.

Based on the foregoing, the Sub–Panel recommended, and the Full Panel concurred with, a sanction of Indefinite Suspension, and the condition that Respondent bear the costs of the hearing ($106.40). We agree with the findings of misconduct and the recommended sanction.

 While this Court may draw its own conclusions and make its own findings, the unanimous findings and conclusions of the Panel are entitled to much respect and consideration. *In re Glover*, 333 S.C. 423, 510 S.E.2d 419 (1998). The Court may make its own findings of fact and conclusions of law, and is not bound by the panel's recommendation. *Burns v. Clayton*, 237 S.C. 316, 117 S.E.2d 300 (1960) *supra*. The Court must administer the sanction it deems appropriate after a

thorough review of the record. *Matter of Kirven,* 267 S.C. 669, 230 S.E.2d 899 (1976).

In cases involving similar misconduct, this Court has imposed various sanctions. *See Matter of Glover,* 333 S.C. 423, 510 S.E.2d 419 (1998) (indefinite suspension warranted for failing to deliver to clients and third persons funds that clients and third persons were entitled to receive, failing to render a full accounting, committing acts that reflected adversely upon attorney's honesty, trustworthiness, and fitness as a lawyer, engaging in conduct involving moral turpitude, engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation, engaging in conduct prejudicial to the administration of justice, engaging in conduct tending to pollute the administration of justice, and violating the oath of her office); *Matter of Cabaniss,* 329 S.C. 366, 495 S.E.2d 779 (1998) (definite suspension of two years for failing to maintain financial records, commingling funds from personal, operating and trust accounts, misusing trust funds, and failing to perform services); *Matter of Edwards,* 293 S.C. 413, 361 S.E.2d 123 (1987) (indefinitely suspending attorney who presented false documents in workers' compensation case, gave forged divorce order allegedly executed by family court judge to client, and improperly used trust funds to cover shortages in other accounts); *Matter of Hunter,* 331 S.C. 586, 503 S.E.2d 464 (1998) (disbarment warranted for misappropriating client funds and converting these funds for his own gain and for failing to act with reasonable diligence and promptness in representing clients); *Matter of Ledford,* 328 S.C. 280, 494 S.E.2d 118 (1997) (forgery and misappropriation of $83,000.00 for attorney's personal investment warranted disbarment).

We hereby impose the recommended sanction of an indefinite suspension, retroactive to the date of Respondent's interim suspension. Respondent shall also pay the expenses of the panel in the amount of $106.40. Within fifteen days of the date of this opinion, respondent shall surrender his certificate of admission and file an affidavit with the Clerk of this Court showing that he has complied with Rule 30 of Rule 413, SCACR (Duties following disbarment or suspension). In addition to all other requirements respondent must meet prior to being reinstated pursuant to Rule 33, RLDE, it is hereby ordered that Respondent must demonstrate to the satisfaction

of the Committee on Character and Fitness that he has made sufficient restitution to all clients and medical care providers involved in the underlying matters.[5]

INDEFINITE SUSPENSION.

---

5. We note that, as of the date of the hearing before this Court, there was uncertainty as to the precise amounts owed to various clients and medical providers. Accordingly, with the consent of both parties, we leave the amounts due and payable, and the determination of whether Respondent has made sufficient restitution for the Committee on Character and Fitness at such time as Respondent petitions for reinstatement.