538 S.E.2d 1

**In the Matter of Edward L. SESSIONS, Respondent.**

**No. 25196.**

Supreme Court of South Carolina.

Heard Aug. 16, 2000.

Decided Sept. 18, 2000.

---

Lawrence Richter, Jr., and Saul Gliserman, of The Richter Firm, PA, of Mt. Pleasant, for respondent.

Henry B. Richardson and James G. Bogle, Jr., of Columbia, for the Office of Disciplinary Counsel.

PER CURIAM:

Respondent was found to have committed several acts of judicial misconduct while serving as the municipal judge for the City of Hanahan. The hearing panel recommended respondent receive a public reprimand. We agree with the findings of the panel and concur in the recommended sanction. Accordingly, we impose a public reprimand.

### Facts

Respondent, a nonlawyer, was first appointed a Berkeley County Magistrate in 1993. He has served continuously since; his current term expires in 2003. From March until December 1997, he also served as a municipal judge in Hanahan.

The present charges arose out of his actions as a municipal judge, and involve two defendants.

## A. The Chandler Matter

Matthew Chandler was ticketed for careless operation of a motor vehicle in violation of a Hanahan ordinance. Chandler appeared in court on the date specified on the ticket. He testified at the panel hearing that he intended to plead guilty, and had the $140 fine money with him. Pursuant to the well-established procedure followed in the Hanahan Municipal Court, the respondent opened court by inviting all those present who wished to plead guilty to come forward and form a line. When Chandler got to the head of the line, the respondent asked him how he wished to plead. Chandler testified he said "guilty," then started to explain the circumstances surrounding his arrest. The respondent interrupted Chandler and asked him again how he wished to plea, "and I said guilty and he looked around a little bit and then told me to go ahead and leave." The municipal court clerk testified that once Chandler left the courtroom, the respondent turned to her and asked if she knew who Chandler was. When she said no, the respondent told her the defendant was the son of Jeff Chandler, a Hanahan city council member.

The panel found the respondent directed the clerk to write 'dismissed' on Chandler's ticket, and to stamp it, "Dismissed on Motion of State." Neither the arresting officer (Chanceley), who was not yet present in the courtroom, nor the town prosecutor, was aware of the dismissal.

At the hearing, the respondent testified that Chandler said he wanted to plead guilty, but then started to say more. According to his testimony, the respondent stopped Chandler, looked for Officer Chanceley, and then dismissed the case since he did not see Chanceley in the courtroom. He denied saying anything to the clerk.[1] On cross-examination, the respondent acknowledged he departed from "standard operating procedure" in the Chandler case by (1) not telling the defendant to step aside if he was not pleading guilty, and (2)

---

1. The panel found the clerk's testimony more credible than the respondent's on this point. The respondent has not excepted to this conclusion.

not having someone look for Officer Chanceley before dismissing the charge.

B.   The Cutrell Matter

John David Cutrell (John) was ticketed for driving under the influence (DUI) on August 14, 1997, with the court date set for August 26.   Shortly thereafter, John's father (Mr. Cutrell) called a city councilman friend to ask whom Mr. Cutrell could call to ask for a continuance.   The city councilman told him to call the respondent.   Mr. Cutrell did so, and testified that the respondent suggested that he and John come to the respondent's business office that day.   The respondent lectured John, then told Mr. Cutrell he could have a continuance.   There is no contention that there was any discussion of the merits of John's case during the meeting.   The next day, the respondent called the municipal clerk at work, asked her to hold the ticket out (i.e. continue it past August 26), and to set it for trial before him rather than before the other municipal judge.

According to the unchallenged panel findings, when John's case appeared on the September 9 docket, the respondent instructed the clerk to mark it off.   After court that day, the clerk asked the respondent what he wanted done with John's DUI charge, and the respondent told her to dismiss it.   The respondent had indicated on his copy of the docket that John was "NG", that is, not guilty, and the clerk proceeded to process the ticket as if John had been acquitted after a trial. In mid-October, John appeared before the respondent on a separate shoplifting charge.   The arresting officer on the August DUI charge was present, and inquired about disposing of that charge, too.   He was told, for the first time, that the DUI charge had been dismissed in September.   Subsequently, an *Ishmell* [2] order was signed October 28, 1997, recalling the DUI ticket.   John eventually pleaded guilty to the DUI charge in February 1998.

When the shoplifting ticket was called before the respondent on October 14, 1997, John pleaded guilty and was sentenced to thirty days in jail or payment of a $845 fine, plus

---

**2.** *Ishmell v. South Carolina Highway Dept.,* 264 S.C. 340, 215 S.E.2d 201 (1975).

thirty hours of community service. After court that day, Mr. Cutrell, John, and the respondent met in a conference room at the courthouse. As a result of this private meeting, the respondent altered John's sentence and placed him in an alternative program, with his sentence suspended upon completion of participation in a substance abuse program. Neither the prosecutor nor the arresting officer was told of the meeting, nor of the decision to change the sentence.

## Discussion

■ The panel found the respondent violated these provisions of the Code of Judicial Conduct, Rule 501, SCACR:

(1) Canon 1(A), by failing to establish, maintain and enforce high standards of conduct in the two matters at issue;

(2) Canon 2(A), by failing to respect and comply with the law, and act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary;

(3) Canon 2(B), by allowing social or other relationships to influence his conduct or judgment, and by lending the prestige of his judicial office to advance the private interests of another;

(4) Canon (3)(B)(5), by failing to perform judicial duties without bias or prejudice; and

(5) Canon 3(B)(7), by initiating, permitting or considering *ex parte* communications, or considering other communications made to him outside the presence of the parties concerning a pending proceeding.

■ The factual findings in a judicial misconduct action must be supported by clear and convincing evidence. *In the Matter of White*, 330 S.C. 505, 499 S.E.2d 813 (1998). The findings here are supported by the evidence. While in a disciplinary action the Court is free to find its own facts and draw its own conclusions, *In the Matter of Larkin*, 336 S.C. 366, 520 S.E.2d 804 (1999), we see no basis for departing from the findings and conclusions of the panel.

## Conclusion

Respondent has fully acknowledged that his actions in the Chandler and Cutrell matters were wrong, and has expressed

remorse. We note that while respondent has served for more than seven years as a member of the unified judicial system, these are the only charges of impropriety made against him, and both occurred shortly after he assumed a new office. Under these circumstances, we concur in the sanction recommended by the panel and impose upon respondent a

**Public Reprimand.**