637 S.E.2d 565

**In the Matter of Brigina DICKS–WOOLRIDGE, Respondent.**

No. 26228.

Supreme Court of South Carolina.

Heard Oct. 17, 2006.

Decided Nov. 20, 2006.

Rehearing Denied Dec. 18, 2006.

Henry B. Richardson, Jr., Disciplinary Counsel, and Barbara M. Seymour, Senior Assistant Disciplinary Counsel; both of Columbia, for Office of Disciplinary Counsel.

Brigina Dicks–Woolridge, of Florence, pro se.

PER CURIAM:

In this attorney disciplinary matter, the Commission on Lawyer Conduct filed formal charges against respondent.[1]  A hearing before the sub-panel, which respondent did not attend,

---

1.  Respondent was placed on interim suspension in March 2003.

was held regarding the charges. The sub-panel recommended respondent be disbarred from the practice of law. The full panel adopted the sub-panel's report and recommendations.

## FACTS

The essential nature of the charges against respondent involve failing to act diligently for or communicate with her clients, failing to maintain unearned fees and to keep client funds in a trust account, using funds in the trust account for her own benefit, and failing to cooperate with Disciplinary Counsel in the investigation of these matters.

### The Jackson Matter

On December 14, 2001, respondent conducted the closing on the sale of a house owned by Jackson and his former wife. The settlement statement respondent prepared did not accurately reflect the actual transaction. Further, respondent withheld $30,913.87 from the closing to pay off the mortgage; however, she did not immediately pay it off. Thereafter, respondent's trust account balance fell below the amount required to pay off the mortgage, and the amount was not restored until January 31, 2002. At that time, she paid off the mortgage. Respondent failed to produce sufficient records during the disciplinary investigation to determine the source of the deposit that restored the balance.

Although respondent paid Jackson's mortgage on January 31, 2002, she did not file the deed and completed mortgage until January 2003, almost a year after the closing. The payment of the mortgage and recording fees left a ledger balance of $892.00, which reflects the amount still owed to Jackson and his former wife. Review of the bank statements indicated the balance in the trust account dropped below the ledger balance twice.

The panel found there is clear and convincing evidence respondent failed to act with diligence in this matter in violation of Rule 1.3 of Rule 407, SCACR, failed to keep safe her clients' funds in violation of Rule 1.15 of Rule 407, SCACR, failed to maintain accurate or sufficient financial records in violation of Rule 417, SCACR, and that respondent engaged in a criminal act in willfully spending the funds

inadvertently wired into her trust account in violation of Rule 8.4(b) and (d), of Rule 407, SCACR.

The panel further found respondent failed to cooperate in the investigation of this matter. Respondent twice failed to appear to give a statement pursuant to Rule 19(c)(4) of Rule 413, RLDE. Following her interim suspension, respondent ultimately appeared for a Rule 19(c)(4) statement and produced some records at that time. However, she did not fully comply with the subpoena and did not appear for the conclusion of her statement even though she requested the opportunity to return and provide additional information. Accordingly, the panel found respondent failed to cooperate in this matter in violation of Rule 8.1.

### *The Grant Matter*

Respondent represented Grant regarding her claims arising from a June 2000 auto accident. During the representation, Grant moved away and her mother became respondent's contact. Respondent obtained a $7,000 settlement in January 2002. The mother testified she received a check for her daughter's portion of the settlement but did not receive an accounting of the remaining funds. The fee agreement obligated respondent to pay medical providers from the settlement proceeds. However, these medical bills were not promptly paid at the time of the settlement. The mother testified that both she and her daughter made a number of unsuccessful attempts to communicate with respondent about the unpaid bills. According to the file produced by respondent, the bills were not all paid until May 2002, after she received notice of the grievance.

Respondent testified in her Rule 19(c)(4) appearance that the check she issued to Grant was inadvertently written from her operating account. Instead of moving the amount of Grant's share from the trust account to the operating account to correct the error, respondent chose to leave those funds in the trust account and give herself a "credit" that she subsequently used to pay bankruptcy filing fees for various clients. She kept no ledger or other accounting of those payments.

The review of respondent's trust account records revealed that she issued two trust account checks payable to herself for

fees in Grant's case prior to receipt and deposit of the settlement check. The trust account records show no other deposit of funds that would entitle respondent to these two payments. According to the fee agreement, respondent was only entitled to one-third of the recovery. Respondent did not provide an explanation for the dates or amounts of the checks to herself.

The panel found there is clear and convincing evidence respondent failed to diligently disburse the settlement proceeds in violation of Rules 1.3 and 4.4, of Rule 407, SCACR; failed to adequately communicate with Grant and her mother in violation of Rule 1.4; misappropriated $4,622.21 from her trust account when she negotiated checks payable to herself prior to deposit of funds in the account, in violation of Rules 1.15, 8.4(b), and 8.4(e); and failed to maintain the financial records related to this transaction as required by Rule 417, SCACR.[2]

The panel further found respondent failed to cooperate in the investigation of this matter. She appeared pursuant to Rule 19(c)(4) and produced her client file, but was unable to produce adequate financial records to show that all of the funds received on Grant's behalf were appropriately disbursed. Respondent was given fifteen days to produce those documents. She failed to do so and she failed to appear at the conclusion of her Rule 19(c)(4) appearance. The Panel found there is clear and convincing evidence respondent failed to cooperate in violation of Rule 8.1.

### The Graham Matter

Respondent was appointed to represent Graham in a post-conviction relief matter in June 1999. At the PCR hearing, the judge indicated he was going to deny the application and instructed the Attorney General's office to prepare an order. There was a fire in respondent's office in May 2001. As a result of the fire, respondent's computers were destroyed and several client files were lost or damaged. Graham's original client file was lost in the fire and respondent did not take any steps to reconstruct that file. She also failed to create a new

---

2. In her Rule 19(c)(4) appearance, respondent admitted she was not in compliance with Rule 417.

file for maintenance and management of documents generated and received in Graham's case.

Respondent admitted she did not take any action on Graham's behalf following the PCR hearing. She received a proposed order from opposing counsel in December 2001, but she did not send Graham a copy or determine the order was actually filed. Respondent did not comply with Graham's requests for copies of documents from his file, nor did she have any communication with him following the PCR hearing. She did not advise him of his right to appeal.

The panel found respondent's lack of cooperation, her failure to respond to the Notice of Full Investigation, and her misrepresentations to the panel in her Answer in this matter all violated Rule 8.1, of Rule 407, SCACR. The panel also found there is clear and convincing evidence that respondent violated Rules 1.1, 1.2, and 1.3 by failing to maintain a client file for Graham, failing to take any action on his behalf following his PCR hearing, and failing to advise him of his right to appeal. The panel stated that the lack of attention to Graham's legal matter amounts to conduct prejudicial to the administration of justice in violation of Rule 8.4(e). The panel further found respondent failed to adequately communicate with Graham in violation of Rule 1.4 and improperly withdrew from representing him in violation of Rule 1.16.

### The Allen Matter

At the hearing, Allen testified she paid respondent a $500 retainer to represent her in contempt proceedings she filed in connection with a child custody case. From December 2002 to April 2003, Allen made numerous unsuccessful attempts to reach respondent by phone at her office and at home. Respondent did not correspond with Allen about her case and missed an appointment with her.

In March 2003, respondent was placed on interim suspension. She did not produce Allen's client file to the attorney appointed to protect her clients' interests upon her suspension. Allen's file was not located, but the attorney was able to reconstruct it from loose mail located in respondent's office and from materials received from opposing counsel. From the panel's review of the file it appeared respondent did not take

any action on Allen's behalf other than an initial letter to opposing counsel proposing a settlement and a letter to the judge on the same date requesting a continuance.

In her Answer, respondent asserts she found Allen's client file in her office and that the attorney to protect client interests failed to properly perform his duties as trustee. However, the panel noted respondent had failed to produce the file she claims to have located to Disciplinary Counsel. The panel stated, given that fact, and because respondent did not appear at the hearing to present evidence to support her assertions in that regard, the matter would be resolved in favor of the attorney to protect client interests and the panel concluded that either no file was maintained for Allen or that respondent failed to turn it over to the attorney upon her interim suspension.

The panel found there is clear and convincing evidence that respondent failed to adequately communicate with Allen about her domestic matter; failed to provide even minimally competent or diligent representation of Allen; and failed to earn the fee she was paid. Accordingly, the panel found respondent violated Rules 1.1, 1.2, 1.3, 1.4, and 1.5, of Rule 407, SCACR.

### The McRaye Matter

McRaye paid respondent $600 for a divorce. McRaye testified respondent repeatedly put off the hearing and failed to diligently pursue his case. He was unable to acquire information from respondent about the status of his case despite calls and visits to her office. Ultimately, McRaye fired respondent and hired someone else. McRaye had to pay his new attorney additional funds to complete tasks respondent had not done or redo tasks he was unable to confirm because respondent did not timely deliver his client file.

The panel found respondent failed to competently and diligently represent McRaye in violation of Rules 1.1, 1.2, and 1.3, of Rule 407, SCACR. The panel found she failed to adequately communicate with McRaye and his subsequent attorney in violation of Rules 1.4 and 1.16. Finally, the panel found she violated Rule 1.5 by failing to earn the fee she charged in the case and by not refunding that fee.

## The Matson Matter

Matson retained respondent to represent her in a bankruptcy matter. Matson paid $600 toward a $1,175 retainer on February 2, 1999. Respondent did not deposit this fee into her trust account. Although Matson's fee payment had not been deposited in her trust account, respondent wrote a trust account check to the bankruptcy court for the $175 filing fee on February 5, 1999, and a second check for $175 for a subsequent filing on March 12, 1999.

The panel found there is clear and convincing evidence respondent failed to deposit Matson's $600 payment into her trust account. The panel noted it was unclear whether this payment was for attorney's fees or costs. In either case, respondent was required to hold the funds in trust. The panel found the $350 used to pay filing fees for Matson was money held on behalf of one or more other clients. Based on these findings, the panel found respondent violated Rule 1.15 in this matter.

## The Trust Account Matter

The panel's review of respondent's Rule 19(c)(4) testimony revealed numerous violations of the trust accounting requirements. Since opening her solo practice, respondent failed to conduct monthly reconciliations of her trust account. The panel found respondent did not reconcile the balance in her account, but simply compared her bank statements to her files or personal recollection of deposits. Even that review by respondent was done sporadically.

Respondent stated that prior to the fire in her office in May 2001, she maintained an accounting journal and client ledgers. After her financial records were lost or destroyed as a result of the fire, respondent did not attempt to reconstruct those records. She acknowledged that, at the time of the fire, her trust account contained money being held for clients, yet she did not make any attempt to determine who had how much on deposit.[3]

---

**3.** Respondent stated she recreated ledgers for a five or six month period at the request of the Attorney to Assist; however, because she did not produce those records, the panel found her statement lacked credibility.

From the date of the office fire until the date of respondent's interim suspension, respondent did not maintain client ledgers or an accounting journal concerning transactions that occurred after the fire. Additionally, she did not reconcile her trust account for that time period.

In her Answer, respondent states that in June 2001, she noticed excess money in her trust account. She did not know where the funds came from, but stated "they could not have come at a better time," given the fire in her law office. At that time, she began to use the money "as needed." In December, respondent was notified by a lender that the source of the money was an inadvertent wire transfer into her trust account. The lender demanded the return of the funds. Respondent confirmed the balance in her trust account was sufficient to return the money to the lender. She then returned the money without regard to whose money it actually was. Respondent claimed she replaced some of the client funds used to repay the lender with the proceeds of a loan on her house; however, she did not produce any document to confirm this.

In October 2001, respondent received an insurance check in the amount of $21,672.54 for damages sustained in her office fire. She deposited this check into her trust account. Thereafter, respondent issued two checks to herself, two checks to a remodeling company, and several checks to various payees for furniture and office equipment. The notations on these checks reference respondent's insurance proceeds. On June 3, 2002, respondent wrote a third trust account check to herself with a reference to her insurance claim with no corresponding deposit. Review of the bank statements revealed that, during that same period, respondent deposited no other checks from her insurance company and no other deposits that correspond to the payments respondent made to herself. On June 12, 2002, respondent deposited an additional check from her insurance company in the amount of $1,636.30. Respondent's total deposits of fire insurance claim proceeds into the trust account were $23,308.84 and her total disbursements referencing those proceeds were $39,202.47.

In her response to the Notice of Full Investigation in this matter, respondent stated she had considered whether depos-

iting the insurance proceeds into her trust account was commingling. She concluded it was not as she was "essentially handling an insurance matter for" herself and she was "representing" herself. The panel found this statement does not explain why she chose to deposit some of the insurance checks into her trust account and some into her operating account. The panel also found that her statement does not explain why she did not keep a record of those funds or why she wrote checks from the trust account in excess of the deposits. The panel stated it was unable to ask for an explanation because respondent did not appear at the hearing.

The panel found there is clear and convincing evidence respondent failed to comply with the requirements of Rule 417, SCACR, prior to the fire in her office. The panel found respondent had violated Rule 1.15, of Rule 407, SCACR, and Rule 417 by failing to reconstruct even minimal documentation to determine whose funds she had in her trust account at the time of the fire. The panel stated that, giving due consideration to the extreme difficulties respondent likely encountered following her office fire, they found the fact she made absolutely no attempt to maintain even minimally sufficient records of post-fire transactions for nearly two years to be misconduct rising to the level of blatant indifference to Rule 417. In addition, the panel found respondent commingled her own funds with client funds when she deposited the insurance proceeds into her trust account. The panel further found the issuance of checks in excess of those deposits amounted to misappropriation of $15,893.66. The panel found that conduct violated Rules 8.4(b) and 8.4(d).

The panel considered mitigating and aggravating circumstances before determining the appropriate punishment to recommend for respondent. As mitigating circumstances, the panel considered respondent's office fire, her reputation as an attorney, and the fact that she did not have any prior disciplinary history.

As aggravating circumstances, the panel considered (1) respondent's pattern of misconduct in failing to diligently pursue her clients' legal matters, failing to communicate with her

clients, and failing to maintain unearned fees and to safekeep client funds in the trust account; (2) her lack of full coopera-tion in the disciplinary investigation; (3) her experience as an Attorney to Assist charged with investigating allegations of attorney misconduct; (4) the egregiousness of respondent's conduct in using funds in her trust account for her own benefit; and (5) her failure to appear at the hearing.

The panel concluded that clear and convincing evidence warranted disbarment plus the costs of these proceedings. In addition, the panel recommended the Court require respon-dent to make the following payments in restitution: $446 to Jesse A. Jackson; $446 to Dedra Jackson; $500 to Michelle Allen; and $600 to Mingo McRaye. The panel also recom-mended respondent be required to pay to the Lawyers' Fund for Client Protection: $350 for the unknown client funds used for Matson's filing fees; $15,893.66 for the unknown client funds respondent used for fire losses and paid to herself; $2,288.88 for the funds paid to herself above the fee amount in the Grant matter; and any amount paid out by the Lawyers' Fund following respondent's interim suspension. The panel noted respondent should receive credit for the amount that was paid to the Lawyers' Fund which represented the funds remaining in her trust account at the time of her interim suspension.

## DISCUSSION

The authority to discipline attorneys and the manner in which discipline is given rests entirely with this Court. *In re Long*, 346 S.C. 110, 551 S.E.2d 586 (2001). The Court may make its own findings of fact and conclusions of law, and is not bound by the panel's recommendation. *In re Larkin*, 336 S.C. 366, 520 S.E.2d 804 (1999). The Court must administer the sanction it deems appropriate after a thorough review of the record. *Id.*

Given the facts of this case and taking into consider-ation discipline rendered in similar cases, the Panel's recom-mendation of disbarment is appropriate. *See, e.g., In re*

*Chandler,* 356 S.C. 288, 588 S.E.2d 610 (2003) (disbarment where attorney failed to cooperate with disciplinary counsel and appear at his hearing; failed to communicate with and act with due diligence for his clients; caused significant financial losses to his clients and former law partner; misappropriated funds; and engaged in misconduct involving dishonesty, deceit, and misrepresentation); *In re Strickland,* 354 S.C. 169, 580 S.E.2d 126 (2003) (disbarment where attorney failed to maintain integrity of trust account and operating account, misappropriated funds, and made certain misrepresentations to disciplinary counsel).

Accordingly, we find respondent's misconduct warrants disbarment. The disbarment shall be retroactive to the date of respondent's interim suspension. Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing she has complied with Rule 30 of Rule 413, SCACR, and shall also surrender her Certificate of Admission to the Practice of Law to the Clerk of Court. Respondent is required to pay restitution to presently known and/or subsequently identified clients and other persons and entities who have incurred losses as a result of respondent's misconduct in connection with this matter. Moreover, respondent is required to reimburse the Lawyers' Fund for Client Protection for any claims paid as a result of her misconduct in connection with this matter. Respondent will be given credit for the amount that was paid to the Lawyers' Fund which represented the funds remaining in her trust account at the time of her interim suspension. Respondent shall not apply for readmission until all restitution has been paid. Further, within thirty (30) days of the date of this opinion, Respondent must pay the costs associated with these proceedings.

**DISBARRED.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.