656 S.E.2d 376

In the Matter of W. James **HOFFMEYER**, Respondent.

No. 26422.

Supreme Court of South Carolina.

Heard Oct. 18, 2007.
Decided Jan. 22, 2008.

Lesley M. Coggiola, Disciplinary Counsel, and C. Tex Davis, Jr., both of Columbia, for Office of Disciplinary Counsel.

Kevin M. Barth, of Florence, for Respondent.

PER CURIAM.

This is an attorney discipline case involving an inappropriate sexual relationship between James Hoffmeyer (respondent) and a client (Client). The Commission on Lawyer Conduct Full Panel (Panel) adopted the report of the sub-panel, which recommended a public reprimand.

The Office of Disciplinary Counsel (ODC) appeals and asks for a harsher sanction, contending the Panel erred in failing to find other instances of misconduct. We agree and impose a nine month suspension. In addition, respondent is to be charged the costs of this disciplinary proceeding.

## FACTS

Respondent is a solo practitioner who mainly practices in the areas of criminal defense and insurance defense, along with a small amount of family court work. In September 2003, Client retained respondent to represent her in a legal separation and child custody action. Client and her husband had been negotiating terms without legal representation, and they were close to reaching an agreement when Client retained respondent as her counsel. Client, who was struggling with an eating disorder and depression, desired a prompt resolution of her case because she was concerned her husband would use her health against her on the issue of custody.

After respondent sent Client's husband a letter enclosing proposed terms of an agreement, Client's husband retained counsel to represent him on October 2, 2003. Respondent and Client's husband's attorney began exchanging proposals in an attempt to finalize the separation agreement.

Around this point in time in early October 2003, respondent and Client started having frequent telephone conversations and office visits, which were personal in nature and unrelated to Client's domestic case. The increasing attraction between respondent and Client resulted in a physical encounter on or about October 10, 2003. Although he admitted he should not have continued to represent Client, respondent failed to withdraw as Client's attorney after the incident and continued to negotiate on her behalf because he believed a speedy resolution was in Client's best interest.

On October 14, 2003, respondent and Client engaged in sexual intercourse at respondent's house. Respondent discussed with Client that he should withdraw as her counsel, but she asked him to continue representing her, again citing her desire to obtain quickly an agreement in her favor.

Respondent continued to negotiate with Client's husband's counsel. One of the proposed provisions of Client's settlement

agreement was that Client be required to pay her husband $3,500 for his share of the equity in the marital home. Respondent gave Client $3,500 from his personal funds to enable Client to reach a quick resolution with her spouse. Respondent admitted that in addition to concerns over Client's medical condition, he desired to reach a prompt settlement for Client so there would be less of a problem spending time with Client.

In addition, during the early part of October 2003, Client's eating disorder worsened, and her physicians recommended she be admitted to an in-patient facility in New Orleans, Louisiana. Client was making plans to travel to New Orleans, and respondent instructed his secretary to use respondent's office credit card to purchase a plane ticket for Client to travel to the treatment center in New Orleans. However, no plane ticket was purchased because the credit card had not been activated. In addition, respondent gave Client $100.00 in cash for her personal use when she arrived in New Orleans.

On October 15, 2003, one day before Client was to travel to New Orleans, respondent allowed Client to spend the night with him at his home. Late that evening, Client's husband arrived at respondent's home and confronted Client and respondent regarding their relationship. Client's husband took with him a tape recorder and recorded the exchange.

After the confrontation with Client's husband on October 15, 2003, respondent told Client the next morning that he could not continue as her lawyer. He provided her with names of several lawyers who could handle her case and assured Client that he would take care of her attorney's fees. Later that day, respondent delivered Client's file to another attorney, discussed Client's case with him, and also assured the attorney that respondent would be financially responsible for Client's legal fees. Eventually, another local attorney agreed to represent Client and respondent paid the retainer fee.

On October 17, 2003, respondent made a Self–Report to ODC.

Client's attorney negotiated a settlement agreement on behalf of Client, which was approved by the family court in January 2004. The agreement reached is very similar to the one previously negotiated by respondent, and Client received

primary custody of the parties' minor children. Accordingly, the Panel concluded that respondent's personal relationship with Client did not adversely affect her domestic case.

The Panel did find that respondent violated Rule 1.7(b) and Rule 1.16 by failing to withdraw from representing Client as soon as it became clear that he and Client had developed strong personal feelings for each other. The Panel concluded that ODC failed to prove by clear and convincing evidence the remaining allegations of misconduct in the formal charges.[1] The only sanction recommended by the Panel was a public reprimand.

## LAW/ANALYSIS

I. Rule 1.14

■ ODC objects to the Panel's failure to find that Client was under a disability as defined in Rule 1.14, SCRPC, and that respondent's conduct constituted a violation of Rule 1.14. We agree.

Rule 1.14(a) states, "When a client's capacity to make adequately considered decisions in connection with a representation is diminished, whether because of minority, mental impairment or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client."

When Client first came to respondent's office, she was depressed, taking prescription medication for anxiety, and showed signs of anorexia. During respondent's representation of Client, Client was hospitalized several times for treatment of dehydration and malnutrition due to anorexia. These physical problems, coupled with the stress of going through a divorce, enhanced Client's vulnerability. Respondent's failure to maintain a normal relationship with his vulnerable client constitutes a violation of Rule 1.14.

---

1. We agree with the Panel that ODC did not prove by clear and convincing evidence the allegations of misconduct regarding: (1) respondent's allegedly false statements given to ODC; (2) respondent's alleged settlement negotiations with Client's husband during their confrontation; (3) the manner in which respondent retained counsel for Client after he withdrew; and (4) respondent's alleged attempt to obstruct justice by "coaching" Client before her statements to ODC.

## II. Rule 1.8

■ ODC argues that the Panel erred by not finding a violation of Rule 1.8 because it deemed the financial assistance given to Client by respondent was merely a gift. We agree.

Rule 1.8(e) prohibits a lawyer from providing "financial assistance to a client in connection with pending or contemplated litigation." The Panel determined that the $3,500 payment to aid Client in her divorce negotiations and the $100 cash, given by respondent before he withdrew as her attorney, were not prohibited by Rule 1.8(e) because there was no expectation of repayment.

These payments, whether deemed to be loans or gifts, are prohibited by Rule 1.8(e). Rule 1.8(e) forbids an attorney from providing financial assistance in connection with pending litigation. The rule does not distinguish between loans and gifts, and the term "financial assistance" is unambiguous and encompasses both loans and gifts of money. *See In re Strait,* 343 S.C. 312, 540 S.E.2d 460 (2000) (advancing money to client for his electric bill); *In re Larkin,* 336 S.C. 366, 520 S.E.2d 804 (1999) (providing money for mobile home payments for client and providing loans to numerous clients); and *In re Mozingo,* 330 S.C. 67, 497 S.E.2d 729 (1998) (furnishing money for a rental car to a client). Accordingly, respondent violated Rule 1.8(e) when he provided financial assistance to Client while he represented her.

## III. Continued legal representation

■ ODC argues that respondent continued his legal representation of Client after he formally withdrew and continued a sexual relationship with Client, thereby committing a separate violation of Rule 1.7(b) and Rule 1.16. We agree.

The record reflects that after formally withdrawing from the domestic action and while he and Client were still involved in a romantic relationship, respondent: a) prepared several affidavits in Client's domestic case in August 2004; and b) prepared and filed a power of attorney for Client in January 2005. Although respondent did not continue to officially represent Client in her continuous custody disputes with her ex-husband, we find that respondent continued to act as Client's attorney while they were still physically involved with each

other. Respondent's preparation of affidavits and a power of attorney on Client's behalf constitutes separate violations.

IV. Unfitness to practice law/legal profession in disrepute

ODC contends that respondent acted with an utter lack of judgment and demonstrated an unfitness to practice law, which is a ground for sanctions under Rule 7(a)(5), Rule 413, RLDE. We agree.

The record is replete with instances where respondent showed questionable judgment which demonstrates an unfitness to practice law.

First, respondent's behavior during the confrontation with Client's husband on the night of October 15, 2003, causes us great concern. Respondent belittled Client's husband's actions in regards to the separation and divorce proceedings, using information he obtained through his representation of Client.

Another incident that brings the legal profession into disrepute occurred when respondent and Client, in anticipation of the issue arising in Client's domestic litigation, drafted a synopsis of events involving their relationship up until November 2003. The timeline trivializes certain events and makes vulgar references to Client's private affairs. Respondent testified that the document was a result of two people being "silly," but we believe the situation involving respondent and Client is far from humorous and shows questionable judgment.

Another incident involves an encounter between Client, respondent, and an acquaintance of respondent named Gigi. In December 2003, respondent came home to find Client had intentionally cut her wrist with a knife, leaving a large gash. Gigi was also present at the home. Although there are conflicting details of the events of that night, a struggle ensued amongst all three, resulting in Gigi leaving respondent's home with a broken nose.

After Gigi left the home, respondent expressed concerned over Client's wrist wound and acknowledged the need for medical attention. However, Client did not want this incident to be used against her in future custody disputes, so she and respondent avoided professional medical attention. Instead of

going to a doctor, respondent sewed up Client's wound with seven to eight stitches while Client, a nurse, directed him.

Later, Gigi contacted respondent and informed him that she was holding him responsible for her injuries. Respondent drafted a document, styled as a "Complete and Full Release", which was typed by Client and provided a payment of $19,000 by respondent to Gigi. The document provided that Gigi would hold respondent harmless from any liability, but it did not provide that protection to Client, even though Client may have been responsible for the injuries. Respondent also failed to inform Client that she should seek independent legal advice in this regard.

Finally, respondent's judgment is called into question for not only failing to inform the family court of Client's problems with substance abuse, eating disorders, and other self-destructive behavior, but also for affirmatively supporting Client in her custody dispute in August 2004 when he knew of her problems. By filing an affidavit in support of Client, respondent let his personal feelings for Client get in the way of his responsibilities as an attorney and officer of the court. His decision to get involved in a legal matter to support Client's bid for custody of two small children despite her numerous problems demonstrates that respondent's professional judgment was seriously hampered by his personal feelings for Client.

### Aggravating and mitigating circumstances

The Panel did not make any findings of aggravating circumstances, but we believe the vulnerability of Client should be considered. Despite their mutual attraction, respondent still should have recognized the vulnerability of Client. She was under the stress of pending divorce, had just ended a recent affair, and was struggling with anxiety, depression, and anorexia.

The Panel found numerous mitigating circumstances. These included the fact that respondent had no prior disciplinary action and self-reported, as well as the following evidence that respondent: participated in local mock trials at schools, spoke at career day, accepted numerous court appointments, participated in numerous legal seminars, prepared wills for soldiers leaving for Iraq, was involved in the Big Brother program, and donated and participated in over 16 charities

and local fundraisers. Also, respondent offered evidence from 21 character witnesses, who spoke in high regard of respondent's skills, diligence, community service, and professionalism. We also note that all of respondent's disciplinary problems have arisen out of his relationship with Client, and although the violations are quite serious, we do not feel that respondent's behavior constitutes a continuing danger to the public.

## CONCLUSION

The purpose of disciplinary proceedings is to protect the public and the integrity of the legal system. *In re Chastain*, 340 S.C. 356, 532 S.E.2d 264 (2000). In light of our findings of additional instances of misconduct, we suspend respondent from the practice of law for nine months. In addition, within ninety (90) days of the filing of this opinion, respondent shall pay costs associated with this proceeding. Within fifteen (15) days of the filing of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR.

**DEFINITE SUSPENSION.**

TOAL, C.J., MOORE, WALLER, PLEICONES and BEATTY, JJ., concur.