668 S.E.2d 416

**In the Matter of Kimla C. JOHNSON, Respondent.**

No. 26555.

Supreme Court of South Carolina.

Heard Aug. 20, 2008.

Decided Oct. 20, 2008.

78

Lesley M. Coggiola, Disciplinary Counsel, and Barbara Seymour, Deputy Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Kimla C. Johnson, of Clinton, MD, pro se.

PER CURIAM.

This is an attorney discipline case involving misconduct in three matters. The Commission on Lawyer Conduct Panel (Panel) unanimously recommended the following sanctions: (1) indefinite suspension; (2) respondent be required to pay the costs of the disciplinary proceedings; and (3) respondent make restitution to the Lawyers' Fund for Client Protection (Fund) and to victims in the amounts set forth herein.

The Office of Disciplinary Counsel (ODC) appeals and argues that the facts and similar case law call for a harsher sanction. For the reasons stated below, we are not persuaded that we should deviate from the Panel's recommendation. Therefore, we impose the recommended sanctions.

## FACTS

This proceeding involves three separate matters. An investigative panel authorized formal charges, which were then filed in April 2007. A hearing was held before the Panel in October 2007 and the report of the Panel was published in April 2008.

Respondent moved to South Carolina in 1990 and began practicing law in this state. Following the birth of her second child, respondent began practicing law with her husband. Her husband (Husband) was placed on interim suspension in August 1999 and a number of Husband's clients elected for respondent to take over their cases.

### Matter A

Client A hired Husband to represent him in connection with an automobile collision that occurred in March 1999. Respondent took over representation of Client A when Husband was placed on interim suspension. In January 2000, respondent accepted a settlement offer on behalf of Client A in the amount of $40,000.00. Respondent did not disburse the pro-

ceeds of $26,667.67 [1] to or on behalf of Client A, but instead used the funds for her own benefit and for the benefit of her law firm.

Respondent claimed that Client A agreed to loan the funds to her and Husband. However, respondent failed to produce any documentation proving the existence of the loan and the Panel found respondent's testimony in this regard lacking in credibility. The findings of the Panel are entitled to great weight, particularly when the inferences drawn from the testimony in the record depend largely on the credibility of witnesses. *In re Yarborough,* 327 S.C. 161, 165, 488 S.E.2d 871, 873 (1997). Respondent stated to ODC that her financial records were destroyed, but testified at the hearing that this was not true.

ODC presented evidence that respondent allowed Husband to communicate with Client A regarding settlement negotiations, and that respondent communicated with Husband about demand figures.

## Matter B

In November 1999, Client B hired respondent to represent her on a contingency basis in connection with claims arising out of an automobile collision. Respondent received settlement proceeds of $10,000.00 but did not place the proceeds in her client trust account. Respondent and Client B signed a settlement disbursement statement which provided that respondent would receive attorney's fees and pay Client B's medical providers from the proceeds. The remainder of the proceeds were to be paid to Client B. Respondent paid some of Client B's medical bills and disbursed additional proceeds to Client B, yet $1,925.67 of the settlement funds designated to pay medical providers was neither paid to providers nor disbursed to Client B.[2]

---

1. Client A's net proceeds after attorney's fees.

2. The Panel arrived at this figure by subtracting the following amounts from the $10,000 settlement proceeds: an attorney's fee in the amount of $3,333.33, a payment by respondent to one of the providers in the amount of $2,357.00, and payments to Client B in the amounts of $1,900.00 and $484.00.

## Matter C

In 1999, Client C hired respondent to represent her in an employment discrimination matter on a contingency basis. Respondent's fee arrangement was one-third of the recovery to increase to forty percent in the event that a lawsuit was filed. Disciplinary Counsel produced documents showing that in June 2000, respondent settled Client C's claim for $122,020.76. Respondent did not disburse the funds to Client C and instead misappropriated at least $75,822.18.[3]

Client C testified that she communicated primarily with Husband about the settlement. For a number of years, Client C contacted Husband numerous times to inquire about her settlement and, in response, he sent small amounts of cash to Client C by way of Western Union. ODC presented documents showing that between September 2001 and December 2006, Client C received approximately $5,525.00 by wire from Husband.

## PANEL FINDINGS

With regard to all matters, the Panel found by clear and convincing evidence that Johnson violated several South Carolina Appellate Court Rules (SCACR); Rules of Professional Conduct (RPC), Rule 407 SCACR; and Rules for Lawyer Disciplinary Enforcement (RLDE), Rule 413 SCACR. The Panel found violations of Rule 417, SCACR, failure to maintain appropriate financial records, and the following RPC: (1) Rule 1.4, failing to reasonably communicate with client; (2) Rule 1.8, entering into a business transaction with a client without documentation; (3) Rule 1.15, commingling of lawyer and client funds; (4) Rule 5.5, assisting in the unauthorized practice of law; (5) Rule 8.1, false statement in connection with a disciplinary matter; (6) Rule 8.4(b), committing a criminal act that reflects adversely on a lawyer's honesty, trustworthiness, or fitness as a lawyer; (7) Rule 8.4(d), engaging in conduct involving dishonesty, deceit, and misrepresentation; and (8)

---

**3.** The Panel arrived at this figure by subtracting from the proceeds of approximately $122,000 a one-third contingency fee and the total amount of funds sent by way of Western Union by Husband to Client C in response to her inquiries about the settlement.

Rule 8.4(e), engaging in conduct prejudicial to the administration of justice.

## DISCUSSION

 This Court has the ultimate authority to discipline attorneys and the manner in which the discipline is given rests entirely with this Court. *In re Long,* 346 S.C. 110, 112, 551 S.E.2d 586, 587 (2001). This Court may make its own findings of fact and conclusions of law, and is not bound by the Panel's recommendation. *In re Larkin,* 336 S.C. 366, 371, 520 S.E.2d 804, 806–07 (1999). An attorney disciplinary violation must be proven by clear and convincing evidence. *Id.*

 As to Matter A, we do not agree with two of the Panel's findings. First, though the Panel found that respondent did not loan funds to Client A, the Panel cited a breach of Rule 1.8(a), entering into a business transaction with a client without proper documentation. If no loan existed, then respondent cannot have violated this rule. Second, we find that ODC failed to prove by clear and convincing evidence that respondent assisted with the unauthorized practice of law. The Panel notes that respondent communicated with Husband regarding demand figures after the date of his interim suspension. As Husband was the original attorney in the matter, respondent's communication with Husband concerning the status of the case does not constitute assisting with the unauthorized practice of law.

 With regard to Matter C, we find that ODC failed to prove by clear and convincing evidence that respondent assisted with the unauthorized practice of law. ODC alleged and the Panel found only that Husband communicated with Client C regarding her case and sent funds by way of Western Union. While such actions may constitute the unauthorized practice of law by Husband, no evidence was presented to show that respondent assisted Husband in his actions.

In mitigation of the remaining violations, we note that respondent's mother died tragically and unexpectedly in 1999 as respondent was administering CPR. Respondent testified that her mother's death caused her to feel great grief and guilt, which persisted well after the event and contributed to

her decision-making. Also in 1999, shortly after the death of her mother, Husband was placed on interim suspension from the practice of law. Respondent found herself solely responsible for their law practice and responsible for having to provide for her two special needs children. Respondent testified that the period of time in which the two events occurred constituted a very traumatic time in her life. Her misconduct occurred close in time to these events.

## CONCLUSION

■■ The unanimous findings and conclusions of the Panel are entitled to much respect and consideration. *Larkin, supra,* at 371, 520 S.E.2d at 806. Based on the facts and mitigating factors, we are not persuaded that a harsher sanction is warranted in this case. We therefore adopt the Panel's recommendation and indefinitely suspend respondent from the practice of law.

■ With regard to restitution, we agree with the Panel that Client A is entitled to restitution in the amount of $26,667.67 and Client B is entitled to restitution in the amount of $1,925.67. However, we note that the Panel's recommendation as to Client C does not comport with the Lawyers' Fund for Client Protection Rules of Procedure.[4] Section IV of the Rules of Procedure states that before a client may be reimbursed by the Fund, the client must sign a subrogation agreement. The Rules also set forth the following procedure if the client later recovers from the offending attorney: "Any amounts recovered ... by the client, in excess of the amount to which the Fund is subrogated ... shall be paid to or retained by the client as the case may be." *Id.* We therefore order respondent to make restitution to all injured parties, including clients and the Fund. We emphasize that Client C shall not receive funds from respondent in restitution until the

---

4. Client C has already received $40,000.00 from the Fund, the maximum available to an individual. In an effort to fully compensate Client C, the Panel ordered respondent to repay $40,000.00 to the Fund and to pay an additional $35,822.18 to Client C. While we appreciate the Panel's intent, where a client has received money from the Fund, the Fund must be repaid before the client can receive any additional restitution from the attorney. *See* Section IV, Lawyers' Fund for Client Protection Rules of Procedure.

Fund is fully reimbursed for the $40,000.00 already paid to Client C from the Fund. The Office of Disciplinary Counsel shall implement a plan for restitution and payment of costs within thirty days of this opinion.

In summary, respondent must meet the following requirements before she may be re-admitted to the practice of law: (1) satisfy Rule 33(f), RLDE, Rule 413, SCACR; (2) pay costs of the disciplinary proceedings in accordance with the plan to be set forth by ODC; and (3) make restitution in accordance with the plan to be set forth by ODC.

Respondent shall file, within fifteen days of this opinion, an affidavit with the Clerk of Court stating that she has complied with Rule 30 of Rule 413, SCACR and shall also surrender her Certificate of Admission to the Practice of Law to the Clerk of Court.

**INDEFINITE SUSPENSION.**

TOAL, C.J., WALLER, PLEICONES, BEATTY and KITTREDGE, JJ., concur.