706 S.E.2d 507

**In the Matter of Marva Ann HARDEE–THOMAS, Respondent.**

**No. 26936.**

Supreme Court of South Carolina.

Heard Jan. 6, 2011.

Decided Feb. 22, 2011.

Lesley M. Coggiola, Disciplinary Counsel, and William C. Campbell, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

James K. Holmes, of Charleston, for Respondent.

PER CURIAM.

In this attorney disciplinary matter, the Office of Disciplinary Counsel (ODC) filed formal charges on allegations of misconduct against Marva Ann Hardee–Thomas (Respondent) involving her mishandling of clients' trust account funds. Following a hearing, the Hearing Panel of the Commission on Lawyer Conduct (the Panel) recommended Respondent be indefinitely suspended from the practice of law, along with certain other requirements. Neither the ODC nor Respondent took exception to the Panel Report.[1] However, because the sanction of indefinite suspension is no longer an available

---

1. Neither party filed briefs with this Court. Therefore, the parties are deemed to have accepted the Panel's findings of fact, conclusions of law, and recommendations. *See* Rule 27(a), RLDE, Rule 413, SCACR ("The failure of a party to file a brief taking exceptions to the report constitutes acceptance of the findings of fact, conclusions of law, and recommendations.").

sanction under the revised South Carolina Rules for Lawyer Disciplinary Enforcement (RLDE),[2] this Court determines Respondent's sanction without recommendation from the Panel and orders Respondent's suspension from the practice of law for a period of two (2) years from the date of this opinion. Further, we adopt all of the additional recommendations made by the Panel and order Respondent to complete these recommendations within the time period recommended by the Panel.

## FACTS

### I. Matter A

In Matter A, a client complained that Respondent failed to pay medical providers out of the settlement proceeds of a personal injury case, resulting in a tax lien being placed on the client and negatively impacting the client's credit rating. In Respondent's Answer, she contended that she delayed in paying the surgeon and chiropractor because of uncertainty as to whether Medicaid had paid the doctors and placed a statutory lien on the settlement proceeds, or whether Respondent was to pay the doctors directly. Respondent maintained that as soon as she resolved the Medicaid lien question she paid the medical providers. Respondent paid the medical providers more than a year after she received the settlement proceeds on behalf of the client in Matter A. Respondent did not deposit the amounts necessary to pay medical providers into the trust account, and finally paid the providers out of her office account.

### II. Matter B

In Matter B, a client complained that he was not paid the amount owed to him after Respondent settled his accident case with an insurance company. Respondent answered that she received the settlement check for that case on the day she had met with the ODC and was placed on interim suspension.

---

2. *See* Amendments to the South Carolina Rules for Lawyer Disciplinary Enforcement, Order dated October 16, 2009 (the amended rules apply to cases where formal charges are pending on the effective date of January 1, 2010). In this case, the formal charges were filed on November 20, 2008 and May 19, 2009, but these charges were pending on January 1, 2010. Therefore, the new rules should have been applied in this case.

She deposited the full check for $4,500 into her trust account, which brought the balance to $2,715.81. Respondent admitted that $3,000 was owed to her client and that she does not know why there were not enough funds in her trust account to cover the balance. Respondent paid neither the medical providers listed on the settlement statement nor the client. The client was forced to file a claim with the South Carolina Bar Lawyers' Fund for Client Protection (Lawyers' Fund) to recover for his loss.

### III. Matter C

In Matter C, the client complained that Respondent failed to pay medical providers out of the proceeds of the client's settlement. Respondent admits that she failed to pay $3,589.70 to certain medical providers as represented in the settlement statement to the client. The client in Matter C was unable to recover from the Lawyers' Fund because she must first satisfy medical bills before she seeks recovery from the Lawyers' fund, and she lacks the funds to do so.

### IV. Matter D

In Matter D, Respondent failed to pay third party medical providers in the amount of $1,826.50, as represented in the settlement statement given to the client. The client was also unable to recover from the Lawyers' fund because she must first satisfy medical bills before she seeks recovery from the Lawyers' fund, and she lacks the funds to do so.

### V. Various Trust Account Matters

In addition to the failure to pay settlement sums to certain clients and medical providers, Respondent failed to properly maintain trust account records, reconcile her trust account, or maintain client ledgers pursuant to the requirements of Rule 1.15 of Rule 407, SCACR, and Rule 417, SCACR. Respondent carried a negative balance of $96.11 in her trust account from July 19, 2007 to August 14, 2007. Additionally, Respondent paid several bills from her trust account that were unrelated to client matters. Respondent maintained her office, trust, and personal accounts at the same bank and mistakenly authorized a payment from her trust account of $595.79 to pay her husband's BellSouth phone bill, never reimbursing the

trust account. Respondent mistakenly caused drafts payable to Bank of America to be drawn from her trust account in the amounts of $500 and $160 that were negotiated to a credit card company for expenses unrelated to client matters, then failed to reimburse the trust fund for these mistaken drafts. On several occasions, Respondent wrote checks on her trust account made payable to herself with the memo field reflecting "Law Office Costs" without any accounting as to which client's case these costs were charged. Generally, Respondent's trust account was so poorly maintained that an accurate accounting was not possible with the records provided and, therefore, it is unknown which clients are owed funds and what funds are missing from the trust account.

Ultimately, the Panel found that Respondent violated the following Rules of Professional Conduct, Rule 407, SCACR:

- Rule 1.1 (Competence)
- Rule 1.3 (Diligence)
- Rule 1.15 (Safekeeping Property)
- Rule 8.4(a) (Misconduct)
- Rule 8.4(d) (Conduct involving dishonesty)
- Rule 8.4(e) (Conduct prejudicial to the administration of justice)

Additionally, the Panel found that Respondent violated Rules 7(a)(1) & 7(a)(6), RLDE, Rule 413, SCACR.

The Panel determined that Respondent should be indefinitely suspended from the practice of law. Additionally, the Panel recommended that Respondent undergo a full forensic accounting of her trust account, reimburse the Lawyers' Fund for all payments made on her behalf, and receive continuing legal education in trust accounting prior to petitioning this Court for reinstatement into the practice of law. Finally, the Panel recommended that Respondent immediately pay restitution to the parties who were unable to collect from the Lawyers' Fund, and pay for the cost of the proceedings. Respondent testified that she would agree to all of these recommendations.

### STANDARD OF REVIEW

The sole authority to discipline attorneys and decide appropriate sanctions after a thorough review of the record

rests with this Court. *In re Thompson*, 343 S.C. 1, 10–11, 539 S.E.2d 396, 401 (2000). In such matters, this Court may draw its own conclusions and make its own findings of fact. *Id.* Nonetheless, the findings and conclusions of the Panel are entitled much respect and consideration. *Id.*

### ANALYSIS

The sanction of indefinite suspension recommended by the Panel was no longer an available sanction under the amended RLDE contained in Rule 413, SCACR. Therefore, this Court will determine a sanction without a recommendation from the Panel. The record of this case includes five attorney discipline opinions, all decided prior to the rule changes, and apparently relied upon by the Panel when deciding what sanctions to impose on Respondent. In four of the five cases, the attorneys were disbarred as a result of the misappropriation of rather large sums of clients' trust account monies. It appears that the Panel found the present case to be more in line with *In re Johnson*, 380 S.C. 76, 668 S.E.2d 416 (2008), an attorney discipline matter resulting in indefinite suspension. In that case, Respondent was charged with three instances of misconduct, all involving the misappropriation of clients' settlement funds. *Id.* at 80–81, 668 S.E.2d at 418. The quantity of money misappropriated in that case was substantially higher than in the present case and appeared to be a product of deception, rather than a product of careless record-keeping. *See id.* (Over a five year period, and after repeated inquiry from the client, Respondent wired only $5,525 of the $75,822 in settlement proceeds to a client, misappropriating the rest). Regardless of the factual differences between the two cases, it is apparent that the Panel believed a lesser sanction than disbarment was in order for Respondent's actions.

We agree with the Panel's finding that a lesser sanction than disbarment is merited in this case. With the exception of the client in Matter B, whose settlement check arrived on the day that Respondent was placed on interim suspension, Respondent disbursed settlement sums to her clients, but in many cases failed to make full payments to third party medical providers. Respondent's handling of her trust account was, at best, haphazard and slovenly; at worst, decep-

tive. However, considering the comparative cases and the mitigating factors noted by the Panel, we believe that a term of definite suspension from the practice of law will allow Respondent to adequately reflect on her actions and to learn proper methods of recording and administering client funds.

From a review of attorney discipline cases under the revised RLDE where trust account mismanagement was involved and where a lesser sanction than disbarment was imposed, *In the Matter of Witcraft* bears the strongest resemblance to this case. 387 S.C. 301, 692 S.E.2d 534 (2010). In that case, the attorney received a settlement check in the amount of $21,000, of which $19,000 was owed his client. *Id.* at 303, 692 S.E.2d at 535. The attorney did not immediately disburse the proceeds, but instead misappropriated the money and was waiting to obtain funds from other sources to replace the funds owed to his client. *Id.* The attorney finally admitted to the client that he could not pay the client what was owed to him, but would pay him $5,000 from his personal account and issue a promissory note for the remainder. *Id.* An accounting of the attorney's trust fund showed that he used the money to pay debts owed on his student loan, various credit card companies, and retail stores. *Id.* This Court imposed a two year definite suspension. *Id.*

"This Court has made it abundantly clear than an attorney is charged with a special responsibility in maintaining and preserving the integrity of trust funds." *In the Matter of Houston,* 382 S.C. 164, 167, 675 S.E.2d 721, 723 (2009) (citation omitted). Here, Respondent admits that she failed to properly maintain adequate financial records, and as a result, clients' money was used to pay her personal expenses and other clients' expenses.

Because of Respondent's inept handling of trust account funds, medical providers did not receive payment for their services, a client was unable to apply for credit due to a tax lien placed by a medical provider, and another client did not receive the money owed to him under a settlement agreement. The failure to keep proper financial records in accordance with the Rules is a serious offense and merits a serious sanction. This Court considers as an aggravating circumstance the duration of Respondent's reckless recordkeeping habits. Additionally, Respondent had prior disciplinary history that in-

cluded a Letter of Caution without a finding of misconduct, and an Admonition citing Rules 1.1 (Competence), 1.3 (Diligence), and 1.4 (Communication). However, Respondent's full acceptance of responsibility for her actions and her willingness to accept all of the recommendations of the Panel, bear in favor of a two year definite suspension, rather than disbarment.

### CONCLUSION

For the foregoing reasons, we order Respondent's suspension from the practice of law for a period of two years from the date of this opinion. Additionally, we follow the Panel's recommendations and order that prior to Respondent's petition for reinstatement into the practice of law, Respondent must undergo a forensic audit of her trust accounts for the years 2001 through 2007, complete the South Carolina Bar's Legal Ethics and Practice Program and Trust Accounting School, and reimburse the Lawyers' Fund for all payments made on her behalf. Respondent must also reimburse the ODC for the costs of these proceedings within sixty days of this opinion. Finally, if Respondent has not done so already, she shall immediately pay restitution to the clients of Matters C and D, who were unable to recover from the Lawyers' Fund, in the amounts specified by the Panel.

**DEFINITE SUSPENSION.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.