736 S.E.2d 856

**In the Matter of Ernest W. CROMARTIE, II, Respondent.**

**Appellate Case No. 2012–210367.**

**No. 27206.**

Supreme Court of South Carolina.

Heard Oct. 4, 2012.

Decided Dec. 28, 2012.

Rehearing Denied Jan. 25, 2013.

266

Disciplinary Counsel Lesley M. Coggiola and Deputy Disciplinary Counsel Barbara M. Seymour, both of Columbia, for Office of Disciplinary Counsel.

J. Steedley Bogan, of Columbia, for Respondent.

Justice BEATTY.

In this attorney disciplinary action, the Commission on Lawyer Conduct ("the Commission") considered Formal Charges filed against attorney Ernest W. Cromartie, II ("Respondent") that arose from: (1) Respondent's plea of guilty to

one count of federal income tax evasion and two counts of aggravated structuring; and (2) Respondent's failure to maintain adequate financial records related to client transactions. A Hearing Panel of the Commission ("the Panel") found Respondent had committed misconduct and, in turn, recommended that Respondent be: (1) disbarred retroactively to the date of his interim suspension; (2) ordered to pay the costs of the disciplinary proceedings, which total $1,359.70, within thirty days; (3) required to complete the Legal Ethics and Practice Program Ethics School and the Trust Account School prior to readmission; and (4) subject to two years of trust account monitoring by the Commission upon his readmission to the practice of law.

During oral argument before this Court, Respondent agreed to resign from membership in the South Carolina Bar.[1] Due to Respondent's age and ailing health, we accept Respondent's irrevocable resignation with the condition that he may never practice law in this state. Although Respondent's misconduct warrants the sanction of disbarment, we find Respondent's irrevocable resignation is a more severe sanction because Respondent is now permanently precluded from practicing law in this state. In contrast, a sanction of disbarment would permit Respondent to file a petition for reinstatement after five years from the date of the entry of the order of disbarment. Our decision also serves the primary purpose of disbarment, which is to protect the public from unscrupulous lawyers and not retribution as Respondent has already been punished by the criminal justice system. Accordingly, we accept Respondent's irrevocable resignation and order him to pay the costs of the disciplinary proceedings as recommended by the Panel.

## I. Facts

Respondent, who is now sixty-seven years old, was admitted to the practice of law in South Carolina on April 11, 1973.

On April 10, 2000, the Court accepted an Agreement for Discipline for a Public Reprimand stemming from Respon-

---

1. On October 15, 2012, this Court received a letter from Respondent wherein he formally requested to resign from membership in the South Carolina Bar.

dent's admitted misconduct involving his failure to: (1) conduct monthly reconciliations of his law firm's real estate account; (2) ensure that associates and non-lawyer employees conducted such reconciliations; (3) maintain a trial balance in the real estate trust account or a running balance for each client by identifying whose money was in the account at any given time; and (4) supervise non-lawyer employees who were responsible for ensuring that correct wiring instructions were given to lenders for funds to be wired to the real estate trust account. Respondent was also found to have committed misconduct by issuing a number of checks from the general escrow account without properly identifying them. *In re Cromartie, II*, 340 S.C. 54, 530 S.E.2d 382 (2000).

On October 21, 2005, pursuant to an agreement entered into between Respondent and Disciplinary Counsel, the Commission issued Respondent a Letter of Caution without a finding of misconduct[2] and a Confidential Admonition[3] stemming from similar misconduct that was the subject of the Public Reprimand in 2000.

On March 9, 2010, Respondent was placed on interim suspension after he pled guilty to one count of Evasion of Income Tax Payments in violation of 26 U.S.C. § 7201[4] and two

---

2. The Letter of Caution cited the following Rules of Professional Conduct ("RPC") contained in Rule 407, SCACR: Rule 1.15(b) (providing that a lawyer may deposit own funds in client trust account for sole purpose of paying service charges on that account); Rule 1.15(c) (providing that a lawyer shall deposit into a client trust account unearned legal fees and expenses); and Rule 8.4(a) (providing that a lawyer shall not violate or attempt to violate the RPC).

3. The Confidential Admonition cited the following RPC: Rule 1.1 (competent representation); Rule 1.3 (diligence); Rule 1.4 (communication); Rule 1.15 (safekeeping property); Rule 1.16(d) (termination of representation); Rule 5.1 (supervisory authority of lawyers); and Rule 8.4(a) (providing that a lawyer shall not violate or attempt to violate the RPC).

4. This code section provides:
   Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.
   26 U.S.C.A. § 7201 (West 2012).

counts of Aggravated Structuring in violation of 31 U.S.C. § 5324(a)(3).[5] *In re Cromartie, II,* 387 S.C. 66, 690 S.E.2d 776 (2010). As a result of his guilty plea, Respondent was sentenced to three concurrent sentences of twelve months and one day. Additionally, Respondent was ordered to immediately pay a special assessment of $300 to the federal court and to pay $58,075.86 to the Internal Revenue Service ("IRS") during his three years of supervised release.

## A. Formal Charges

The Office of Disciplinary Counsel ("ODC") filed Formal Charges against Respondent on July 21, 2011, alleging he committed misconduct based on his convictions in federal court and his failure to maintain adequate trust account records.

As to Respondent's criminal conduct, ODC incorporated the federal documents underlying Respondent's guilty plea and explained that Respondent, between 2004 and 2009, engaged in a pattern of disbursement of earned fees from his client trust accounts that constituted illegal structuring in at least ten client matters. ODC further noted that, in at least one client matter, Respondent disbursed settlement proceeds to a client from his client trust accounts in a manner that constituted illegal structuring.

In terms of Respondent's inadequate financial recordkeeping, ODC noted that Respondent hired a full-time bookkeeper

---

5. This code section states:

> No person shall, for the purpose of evading the reporting requirements of section 5313(a) or 5325 or any regulation prescribed under any such section, the reporting or recordkeeping requirements imposed by any order issued under section 5326, or the recordkeeping requirements imposed by any regulation prescribed under section 21 of the Federal Deposit Insurance Act or section 123 of Public Law 91–508—structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

31 U.S.C.A. § 5324(a)(3) (West 2012). The following elements must be met in order to sustain a conviction for structuring: (1) the defendant in fact engaged in acts of structuring; (2) he or she did so with knowledge that the financial institutions involved were legally obligated to report currency transactions in excess of $10,000; and (3) he or she acted with intent to evade the reporting requirement. *United States v. MacPherson,* 424 F.3d 183, 189 (2d Cir.2005).

following his Public Reprimand in 2000. ODC alleged that Respondent did not: (1) supervise her or review any records, reports, or reconciliations; (2) provide her with specific instructions or continuing education about client trust accounting; (3) know what software she used or provide a backup system for her; (4) maintain accurate client ledgers or an accurate accounting journal for any of his six client trust accounts; and (5) retain complete copies of his bank statements, records of deposit, or canceled checks. Based on these deficiencies, Respondent was unable to find accounting records on his bookkeeper's computer and, as a result, could not provide an accurate accounting of disbursements or the balances in his accounts.

On October 18, 2011, Respondent filed his Answer to the Formal Charges. Although Respondent admitted to the material portions of the allegations, he explained that there were no client funds missing from his trust accounts and that his trust accounts had a positive balance at the time he was placed on interim suspension. Respondent further claimed that he had in fact earned the client fees but, due to his inadequate financial records, could not "determine the identity of the ownership of these funds sufficiently to make a claim on them." Finally, Respondent denied that his conduct demonstrated an unfitness to practice law.

## B. Panel Hearing

The Panel conducted a hearing on January 31, 2012. During the hearing, Respondent testified regarding his personal and educational background as well as his professional accomplishments in public service, particularly as a twenty-eight-year member of the Columbia City Council. Additionally, Respondent offered evidence of his good character through the testimony of former Mayor Robert D. Coble and Hamilton Osborne, Jr., with whom he served on the Columbia City Council. Respondent also submitted documents that outlined his extensive professional and community achievements.

Although Respondent did not contest the Formal Charges, he appeared before the Panel to oppose the potential sanction of disbarment. Instead, he requested to be "forever" suspended in order to avoid the "stigma" of being disbarred, particularly for the sake of his son who is a practicing attorney

with the same name as Respondent. Respondent also took "full responsibility" for his conduct and emphasized that he did not intend to practice law in the future.

## C. Panel Report
### (1) Findings of Misconduct

Based on the information provided during the disciplinary proceedings and Respondent's federal guilty plea,[6] the Panel found Respondent's criminal conduct violated the following Rules of Professional Conduct ("RPC") contained in Rule 407, SCACR: Rule 8.4(b) ("It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."); Rule 8.4(d) ("It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."); and Rule 8.4(e) ("It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.").

The Panel also found that Respondent's admissions regarding his neglect of his trust accounts, failure to supervise his bookkeeper, and failure to maintain required financial records constituted clear and convincing evidence that Respondent violated the following RPC: Rule 1.15(a) ("A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation. A lawyer shall comply with Rule 417, SCACR (Financial Recordkeeping).")[7]; Rule 5.3 (outlining lawyer's

---

**6.** *See* Rule 16(d), RLDE, Rule 413, SCACR ("A certified copy of a judgment of conviction constitutes conclusive evidence that the lawyer committed the crime, and the sole issue in any disciplinary proceedings based on the conviction shall be the nature and extent of the discipline imposed.").

**7.** Rule 1.15 was amended effective March 1, 2012 and July 30, 2012. *See* Amendments to the South Rules of Professional Conduct, Orders

responsibilities regarding non-lawyer assistants); and Rule 8.4(e) ("It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice."). Finally, the Panel found Respondent's admissions regarding his financial recordkeeping constituted clear and convincing evidence that Respondent violated the provisions of Rule 417, SCACR, which identifies the requirements of a lawyer's financial recordkeeping.

The Panel concluded Respondent's conduct constituted grounds for discipline under the following provisions of the Rules for Lawyer Disciplinary Enforcement ("RLDE") contained in Rule 413, SCACR: Rule 7(a)(1) ("It shall be a ground for discipline for a lawyer to violate or attempt to violate the Rules of Professional Conduct, Rule 407, SCACR, or any other rules of this jurisdiction regarding professional conduct of lawyers."); Rule 7(a)(4) ("It shall be a ground for discipline for a lawyer to be convicted of a crime of moral turpitude or a serious crime."); and Rule 7(a)(5) ("It shall be a ground for discipline for a lawyer to engage in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute or conduct demonstrating an unfitness to practice law.").

The Panel rejected Respondent's contention that his conduct did not demonstrate a lack of fitness to practice law. The Panel found Respondent's conduct "demonstrate[d] unfitness" as Respondent's criminal conduct directly involved his client trust accounts and Respondent disregarded the directives of the Supreme Court, even after being publicly reprimanded, as to his ethical and professional obligations regarding client funds.

### (2) Aggravating and Mitigating Factors

In mitigation, the Panel considered the following factors: (1) Respondent's character and reputation, particularly "his dedication and hard work as a member of the Columbia City Council," which was attested to by Respondent's character witnesses; and (2) Respondent's remorse and regret as "[h]e

---

dated March 1, 2012 and July 30, 2012. These amendments, however, do not affect the disposition of the instant case.

made no attempt at the hearing to place the blame for his situation on anyone other than himself."

In aggravation, the Panel considered several factors. First, the Panel noted the "serious and illegal nature of the Respondent's misconduct." The Panel referenced Respondent's plea agreement wherein the Respondent "admitted to willful and purposeful attempts to evade, defeat, and obstruct federal tax reporting requirements and the collection efforts of the IRS." The Panel noted that the counts to which Respondent pled guilty included "unlawful structuring in excess of $200,000, transferring title of personal assets, and failing to pay taxes due." The Panel also pointed out that Respondent "admitted to making false statements to federal law enforcement officers during the criminal investigation." The Panel found this misconduct was aggravated by the fact that "Respondent assisted a client in illegal conduct as well." The Panel also found that Respondent's failure to keep proper financial records constituted a serious offense.

As another factor in aggravation, the Panel considered that Respondent committed multiple offenses and demonstrated a pattern of misconduct over a period of five years.

Finally, the Panel considered Respondent's "extensive disciplinary history" as he had received a Public Reprimand, a Letter of Caution, and an Admonition. In view of these censures, the Panel found Respondent had "demonstrated a blatant disregard for the rules, the cautions from the Commission, and the reprimand from the Supreme Court."

### (3) Recommended Sanction

Finding the aggravating factors outweighed the mitigating factors, the Panel recommended that Respondent be: (1) disbarred retroactively to March 9, 2010, the date of Respondent's interim suspension; (2) ordered to pay the costs of the disciplinary proceedings within thirty days; (3) required to complete the Legal Ethics and Practice Program Ethics School and the Trust Account School prior to readmission; and (4) subject to two years of trust account monitoring by the Commission upon his readmission to the practice of law.

## II. Discussion

### A. Arguments

Although Respondent raises several arguments, his sole exception is to the Panel's recommended sanction of disbarment.[8] For several reasons, Respondent contends that his misconduct warrants the lesser sanction of a two-year suspension.

First, Respondent directs the Court's attention to several cases where a lawyer, who was convicted of violating federal tax law, received a suspension.[9] Based on these cases, Respondent claims there is no precedent from this Court to impose disbarment "for a lawyer who [has] violate[d] the federal structuring laws or who has a conviction for a serious tax violation." Second, Respondent challenges the Panel's reliance on his misconduct involving financial recordkeeping as a basis for disbarment. Because there was no evidence that he used client funds for his own benefit, Respondent believes only a suspension is warranted.[10]

---

8. Respondent's failure to take exception to the Panel's remaining conditions constitutes an acceptance of these recommendations. *See* Rule 27(a), RLDE, of Rule 413, SCACR ("The failure of a party to file a brief taking exceptions to the report constitutes acceptance of the findings of fact, conclusions of law, and recommendations.").

9. *See In re Mitchell*, 318 S.C. 118, 456 S.E.2d 396 (1995) (finding four-month suspension was warranted where lawyer pled guilty in federal court to seven counts of willfully failing to report to the IRS a total of $154,000 in cash received from a client and admitting to failing to properly supervise the conduct of his law office resulting in the issuance of a false affidavit regarding the consideration paid in a real estate transaction); *In re Thornton*, 314 S.C. 301, 443 S.E.2d 905 (1994) (concluding six-month suspension was the appropriate sanction where lawyer pled guilty in federal court to submitting a false tax return); *In re Martin*, 264 S.C. 1, 212 S.E.2d 251 (1974) (holding that indefinite suspension was the appropriate sanction where lawyer pled guilty to five counts of failing to file income tax returns for the years 1967 through 1971); *see also In re Scurry*, 335 S.C. 618, 518 S.E.2d 824 (1999) (finding ninety-day suspension was the appropriate sanction where lawyer pled guilty to one count of willful failure to file a South Carolina Income Tax Return); *In re Barr*, 335 S.C. 617, 518 S.E.2d 823 (1999) (concluding ninety-day suspension was the appropriate sanction where lawyer pled guilty to one count of failure to file a South Carolina Income Tax Return).

10. *See In re Hardee–Thomas*, 391 S.C. 451, 706 S.E.2d 507 (2011) (holding that two-year suspension, rather than disbarment, was war-

## B. Standard of Review

■■■ This Court has the sole authority to discipline attorneys and to decide the appropriate sanction after a thorough review of the record. *In re Welch,* 355 S.C. 93, 96, 584 S.E.2d 369, 370 (2003); *see also* S.C. Const. art. V, § 4 ("The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted."). "The Court is not bound by the panel's recommendation and may make its own findings of fact and conclusions of law." *In re Hazzard,* 377 S.C. 482, 488, 661 S.E.2d 102, 106 (2008); *see also* Rule 27(e)(2), RLDE, Rule 413, SCACR ("The Supreme Court may accept, reject, or modify in whole or in part the findings, conclusions and recommendations of the Commission."). "Although this Court is not bound by the findings of the Panel and Committee, these findings are entitled to great weight, particularly when the inferences to be drawn from the testimony depend on the credibility of the witnesses." *In re Marshall,* 331 S.C. 514, 519, 498 S.E.2d 869, 871 (1998); *see In re Longtin,* 393 S.C. 368, 376, 713 S.E.2d 297, 301 (2011) ("[T]he findings and conclusions of the Panel are entitled much respect and consideration.").

■■■ "A disciplinary violation must be proven by clear and convincing evidence." *In re Greene,* 371 S.C. 207, 216, 638 S.E.2d 677, 682 (2006); *see also* Rule 8, RLDE, Rule 413, SCACR ("Charges of misconduct ... shall be established by clear and convincing evidence, and the burden of proof of the charges shall be on the disciplinary counsel.").

## C. Analysis

■■■ There is precedent from this Court and courts from other jurisdictions to support the Panel's recommended sanction of disbarment as Respondent was convicted of the "serious crime" [11] of structuring, was deficient in his financial

---

ranted where: lawyer's "inept handling of trust account funds" lasted several years and affected clients; lawyer had a disciplinary history involving a Letter of Caution without a finding of misconduct and an Admonition; and lawyer took "full acceptance of responsibility for her actions").

11. *See* Rule 1.0(n), RPC, Rule 407, SCACR (" 'Serious crime' denotes any felony; any lesser crime that reflects adversely on the lawyer's

recordkeeping, and has a prior disciplinary history. *See In re Harte*, 395 S.C. 144, 716 S.E.2d 918 (2011) (concluding disbarment was the appropriate sanction for lawyer who pled guilty to Conspiracy to Commit Mail Fraud and Money Laundering arising out of his assistance in protecting the proceeds of a client's criminal activities); *In re Franklin*, 352 S.C. 24, 572 S.E.2d 283 (2002) (finding that disbarment was warranted where lawyer pled guilty to laundering monetary instruments); *In re Holt*, 328 S.C. 169, 492 S.E.2d 793 (1997) (concluding that lawyer's federal conviction of one count of bank fraud warranted disbarment); *see also In re Counsel for Discipline of the Nebraska Supreme Court v. Wintroub*, 277 Neb. 787, 765 N.W.2d 482 (2009) (finding disbarment was warranted where lawyer was convicted of structuring and committed several other acts of misconduct); *In re Disciplinary Proceeding Against Vanderveen*, 166 Wash.2d 594, 211 P.3d 1008 (2009) (discussing crime of structuring and finding presumptive sanction of disbarment was appropriate where lawyer pled guilty to willfully failing to file a currency report for the receipt of more than $10,000 cash).

Furthermore, the extent of Respondent's criminal conduct and significant disciplinary history weighs in favor of imposing the sanction of disbarment as the facts of the instant case are distinguishable from *In re Mitchell*, 318 S.C. 118, 456 S.E.2d 396 (1995), the case on which Respondent primarily relies in support of a lesser sanction.

In *Mitchell*, the lawyer pled guilty in federal court to seven counts of willfully failing to report to the IRS a total of $154,000 in cash he received from a client. A sentence of imprisonment for ninety days was imposed on the lawyer for these crimes. *Id.* at 119, 456 S.E.2d at 397. The lawyer also admitted that he failed to properly supervise the conduct of his law office when employees issued a false affidavit regard-

honesty, trustworthiness or fitness as a lawyer in other respects; or, any crime a necessary element of which, as determined by the statutory or common law definition of the crime, involves interference with the administration of justice, false swearing, misrepresentation, fraud, deceit, bribery, extortion, misappropriation, theft, willful failure to file income tax returns, or an attempt, conspiracy or solicitation of another to commit a serious crime."); Rule 2(aa), RLDE, Rule 413, SCACR (same).

ing the consideration paid in a real estate transaction. *Id.* As a result of this misconduct, this Court suspended the lawyer for four months. *Id.*

In contrast to Mitchell, Respondent has a prior disciplinary history. Moreover, Respondent's misconduct involved his client trust accounts and included at least ten structuring transactions between April 2003 and April 2009, which clearly established a pattern of illegal activity. Furthermore, the federal plea documents reveal that the structuring not only involved Respondent's attorney's fees, but also payment of a settlement to a client.

However, because an indefinite suspension is no longer an available sanction [12] and Respondent has agreed to tender an irrevocable resignation from membership in the South Carolina Bar, we decline to accept the Panel's recommended sanction of disbarment.

Instead, due to Respondent's age and ailing health, we accept Respondent's irrevocable resignation of his certificate to practice law. *See In re Brown*, 356 S.C. 10, 587 S.E.2d 110 (2003) (imposing public reprimand even though indefinite suspension was warranted where lawyer, who was seventy-one years old, admitted misconduct and agreed to resign from membership in the South Carolina Bar); *see also In re Collins*, 252 Ga. 68, 311 S.E.2d 818, 818 (1984) (accepting resignation from lawyer, who pled guilty to federal charges of failing to file income tax return and conspiracy to evade income taxes, where the action was "equivalent to disbarment"); *In re Hyter*, 235 Kan. 1, 677 P.2d 1017 (1984) (issuing order of voluntary disbarment following lawyer's surrender of certificate to practice law where lawyer pled guilty to felony income tax evasion and against whom there were other pend-

---

12. Because the Formal Charges were filed on July 21, 2011, an indefinite suspension is no longer an available sanction. *See* Amendments to the South Carolina Rules for Lawyer Disciplinary Enforcement, Order dated October 16, 2009 (recognizing that the amended rules apply to cases where formal charges are pending on the effective date of January 1, 2010); *see In re Hardee–Thomas*, 391 S.C. at 452–53, 706 S.E.2d at 507 (recognizing that "sanction of indefinite suspension is no longer an available sanction under the revised South Carolina Rules for Lawyer Disciplinary Enforcement").

ing complaints of professional misconduct); Lori Jean Henkel, Annotation, *Propriety of Attorney's Resignation From Bar in Light of Pending or Potential Disciplinary Action*, 54 A.L.R.4th 264, § 2(a) (1987 & Supp.2012) ("Although attorneys have been accorded the right to submit their resignations at any time, including during the pendency of disciplinary proceedings, a court having jurisdiction has been required to give its consent in order for the resignation to be effective, and whether resignations have been granted has been a matter resting within the courts' discretion.").

Notably, Respondent's irrevocable resignation is a more severe sanction than disbarment as a lawyer who is disbarred may file a petition for reinstatement after five years from the date of the entry of the order of disbarment. *See* Rule 33(a), RLDE, Rule 413, SCACR ("A lawyer who has been ... disbarred shall be reinstated to the practice of law only upon order of the Supreme Court. A petition for reinstatement shall not be filed earlier than 5 years from the date of entry of the order of disbarment."). By submitting his irrevocable resignation, Respondent is now permanently precluded from practicing law in this state.

We find this disposition serves the primary purpose of disbarment, which is to protect the public from unscrupulous lawyers and not retribution as Respondent has already been punished by the criminal justice system. *See In re Taylor*, 396 S.C. 627, 632, 723 S.E.2d 366, 368 (2012) ("As we have recognized, '[t]he primary purpose of disbarment ... is the removal of an unfit person from the profession for the protection of the courts and the public, not punishment of the offending attorney.'" (quoting *In re Burr*, 267 S.C. 419, 423, 228 S.E.2d 678, 680 (1976))); *In re Chastain*, 340 S.C. 356, 365, 532 S.E.2d 264, 268 (2000) (stating, "where the respondent has already been punished by the criminal justice system, our aim in determining the level of discipline is not retribution, but the protection of the public" (quoting *People v. Marmon*, 903 P.2d 651, 655 (Colo.1995))); *see also In re Brown*, 361 S.C. 347, 355, 605 S.E.2d 509, 513 (2004) ("The central purpose of the disciplinary process is to protect the public from unscrupulous and indifferent lawyers." (citation omitted)).

## III.  Conclusion

Although Respondent's misconduct warrants disbarment, we accept Respondent's irrevocable resignation from the South Carolina Bar and order him to pay the costs of the disciplinary proceedings, which total $1,359.70, within thirty days of the date of this opinion.  Within fifteen (15) days of the date of this opinion, Respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**IRREVOCABLE RESIGNATION ACCEPTED.**

KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., dissenting in a separate opinion in which TOAL, C.J., concurs.

Justice PLEICONES, dissenting.

While this Court is the ultimate arbiter of the sanction to be imposed, I agree *in toto* with the findings of the Panel and with its recommendation to disbar Respondent.  I see no reason to depart from our precedents in disciplining Respondent, and would disbar him, which carries with it the requirements of Rule 34 of Rule 413, SCACR.  I would make Respondent's disbarment retroactive to March 9, 2010, the date of his interim suspension, order him to pay costs ($1,359.70) within thirty days of the filing of the opinion, and require him to comply with Rule 30 of Rule 413, SCACR. Prior to his readmission to the practice of law I would require Respondent to complete the Legal Ethics and Practice Program Ethics School and the Trust Account School and to have paid all monies ordered in his federal criminal proceedings. Further, upon his readmission, I would require that Respondent's trust account be monitored for two years by the Commission on Lawyer Conduct.

TOAL, C.J., concurs.